[No. 13988. In Bank.—March 19, 1891.]

# BOARD OF DIRECTORS OF MODESTO IRRIGATION DISTRICT, RESPONDENT, v. WILLIAM TREGEA, APPELLANT.

IRRIGATION DISTRICTS — CONFIRMATION OF BONDS — NOTICE — PUBLICATION — JURISDICTION. — Under the act of March 16, 1889 (Stats. 1889, p. 212), providing for the judicial confirmation of the validity of bonds of irrigation districts, the publication, as prescribed by the act, of a notice of the filing of the petition is sufficient to give the superior court jurisdiction to render a judgment binding upon the lands of the district and their owners, affirming the regularity of the organization of the irrigation district and the legality and validity of its orders for the issuance of its bonds.

ID. — SUFFICIENCY OF NOTICE. — The notice required to be published under the act is to be construed and aided by reference to the statute, and is sufficient if it states the filing of the petition and the substance of the prayer thereof, and in other respects conforms to the statute.

ID. — PRAYER OF PETITION — CONSTRUCTION — PROCEEDINGS FOR ORGANIZATION. — The prayer of the petition, "that the proceedings aforesaid for the issue and sale of said bonds of said irrigation district may be judicially examined, approved, and affirmed by said court," must be read, in connection with the petition, as including a prayer for the approval and confirmation of all the proceedings set out in the petition, including that for the organization of the district and all other proceedings affecting the legality and validity of the bonds and of the order for their sale.

ID. — NOTICE OF SUBSTANCE OF PRAYER. — The published notice sufficiently states the substance of such prayer if it state that the petition prays "that the proceedings for the issue and sale of the bonds of said district may be examined, approved, and confirmed."

ID. — KNOWLEDGE OF LAW — PRESUMPTION — NOTICE OF ALLEGATIONS OF PETITION — RES ADJUDICATA. — A knowledge of the law authorizing and regulating the proceeding is imputed to every one interested in the proceeding; and all persons in the district are bound to take notice of the specific allegations of the petition, and to appear and object to the confirmation of the orders and proceedings stated therein and referred to in its prayer, or be forever precluded from questioning the validity of the bonds issued in pursuance thereof.

ID. — PROCEEDING IN REM.— The proceeding under the statute is in rem, its object being to establish the validity of the bonds as against the irrigation district and all persons interested therein; and to be effective for the protection of investors, the judgment must bind not only the parties appearing, but all the world.

ID. — RIGHTS OF CONTESTANT — JURISDICTION. — Any land-owner of the district directly interested in the price to be realized from the sale of the bonds has a right to insist that the steps necessary to give the court jurisdiction to pronounce a binding decree shall be regularly taken.

ID. — ERRORS WITHIN JURISDICTION. — If there was due publication of sufficient notice of the original petition, the decree of the court confirming the orders for the issuance and sale of bonds therein specifically alleged and of all preliminary proceedings affecting their validity, including those for the organization of the district and the election of its first board of directors, is within the jurisdiction of the court, and can be assailed only by those who have contested the proceeding, and by them only upon the ground of prejudicial errors affecting their substantial rights which have been duly excepted to.

ID. — AMENDMENT OF PETITION — PROCEEDINGS NOT BEFORE ALLEGED — PUBLICATION OF NEW NOTICE. — The decree of the court cannot go beyond the orders for the issuance and sale of bonds which are alleged in the petition; and if the original petition is amended by setting out other orders for the issuance or sale of bonds not referred to or alleged in the original petition, the court will not acquire jurisdiction to confirm such orders without the publication of a new notice of the amended petition.

ID. — DECREE VOID IN PART. — That part of the decree which confirms the validity of proceedings set forth in the amended petition without the publication of a new notice is void; but its invalidity will not affect the validity of that portion of the decree of which the court had jurisdiction under the notice given of the original petition.

ID. — EXTENT OF IRRIGATION DISTRICT — INCLUDING CITY OR TOWN — POWER OF SUPERVISORS — BENEFIT BY IRRIGATION. — A city or town may be included in an irrigation district, if it be determined by the supervisors that the lands comprising the city or town would be benefited by irrigation.

ID. — BENEFIT TO SMALL LOTS. — The board of supervisors may include in the boundaries of an irrigation district all lands which in their natural state would be benefited by irrigation, and are susceptible of irrigation by one system, regardless of the fact that buildings or other structures have been erected upon small lots, which are thereby rendered unfit for cultivation.

ID. — QUESTION OF FACT — CONCLUSIVENESS OF DECISION OF SUPERVISORS — JURISDICTION — REVIEW BY COURTS. — The decision of the board of supervisors upon the question of fact as to what lands will or will not be benfited by irrigation is final and conclusive, and cannot be reviewed by the courts, although upon matters affecting their jurisdiction their orders may be open to review.

ID. — FRAUDULENT DECISION OF SUPERVISORS — PLEADING. — To entitle a land-owner of the district to prove that the board of supervisors and its members, well knowing that the lands of a city would not be benefited by irrigation, had included them corruptly, for the purpose of carrying out a scheme of organization against the wishes of farmers outside of the city, he must plead the facts constituting the fraud.

ID. — BELIEF OF SUPERVISORS — BENEFIT BY IRRIGATION — EXERCISE OF JUDGMENT — PLEADING. — It is not sufficient to allege that the lands of the city would not be benefited by irrigation, and that the order of the supervisors including the city was not made in the exercise of the judgment and discretion of the board, but contrary thereto; but it must be

alleged that the board or its members actually believed at the time of the order that the lands of the city included therein would not be benefited.

ID. — EXCLUSION OF LANDS — CONSENT OF BIDDERS FOR BONDS — RELEASE FROM BID. — An order of the board of supervisors excluding lands from the irrigation district is not void for want of consent of bidders for bonds whose bid had been made with the understanding that they were not to be held to their offer unless they could succeed in negotiating a sale of the bonds to the other parties, and who had been released from their bid by formal resolution of the board of directors of the district before the date of the order of exclusion.

ID. — ORDER OF EXCLUSION IMMATERIAL. — An order of exclusion of lands from the district, whether erroneous or not, cannot be material if it is not set out in the petition, and does not appear to affect the validity of the order for the issuance and sale of bonds, the confirmation of which is prayed for in the petition.

ID. — IDENTITY OF DISTRICT —INDEBTEDNESS — CONSTITUTIONAL LAW. — The identity of the irrigation district is not destroyed by the exclusion of part of the lands therefrom; and if at the time of the exclusion the district had no indebtedness, and no person after notice of the proceeding objected to the exclusion, there is no basis for any claim of injustice or violation of constitutional rights.

ID. — AUTHORITY TO ISSUE BONDS — WATER SUPPLY — CHANGE OF PLANS — ISSUE OF PART OF BONDS VOTED. — The authority to issue bonds is wholly independent of the source of supply of water, or any plans for obtaining it, and the directors may change their plans and obtain a diminished supply from another source, when they find it to the advantage of the district to do so, and may for that purpose issue only part of the bonds previously proposed, voted, and ordered issued.

ID. — DIRECTORY PROVISION OF STATUTE — DISCRETION OF BOARD. — The provision of section 15 of the Wright act for the issuance of the bonds voted is merely directory, leaving it in the discretion of the board to issue and sell such amount of bonds within the amount voted and at such times as they may find expedient.

ID. — REFERENCE OF ORDERS TO AUTHORITY. — An order for the issuance and sale of bonds must be referred to the proceedings by which alone such order is authorized, whether they are expressly referred to or not.

ID. — AMENDMENT OF PLEADING — CONFORMING PLEADINGS TO PROOFS — PRACTICE — TRIAL — RENEWAL OF EVIDENCE. — When the petition is amended at the trial to conform to the evidence, and it appears that the evidence already taken is applicable to the amended petition, the court may properly refuse to try the case *de novo*, and to have introduced anew the evidence already before the court.

ID. — CONSTRUCTION OF WRIGHT ACT — NOTICE OF SPECIAL ELECTION — POSTING OF GENERAL NOTICE. — Notice of a special election to be held under section 15 of the Wright act, at which the proposition to issue bonds is to be submitted to a vote of the electors of the district, may be properly given in pursuance of that section, to the exclusion of the provisions of section 5 as to the posting in the office of the board of the general notice therein prescribed.

Id. — Construction of Supplemental Act — Commencement of Proceeding — Issuance of Bonds. — The supplemental act of 1889 must be construed together as a whole, with reference to its manifest purpose and the evil it was intended to correct, and as allowing the proceeding to be commenced as soon as any resolution has been adopted for the issue and sale of bonds, and before any bonds have been issued.

Appeal from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*George W. Schell, C. W. Eastin,* and *T. B. Bond,* for Appellant.

*C. C. Wright, C. C. Stonesifer,* and *A. L. Rhodes,* for Respondent.

Beatty, C. J. — This is a special proceeding instituted in pursuance of the act of March 16, 1889 (Stats. 1889, p. 212), for the purpose of obtaining judicial confirmation of the validity of certain bonds of the respondent which it has ordered to be issued and sold.

The act referred to is supplemental to the act entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes," approved March 7, 1887, and commonly known as the Wright law. (Stats. 1887, p. 29.)

The original act, as its title imports, provides for the organization of irrigation districts, and for the adoption and carrying out of plans for the irrigation of the lands embraced therein. Among other things so provided for is the issuance and sale of the bonds of the several districts. Before any such bonds can be issued or sold, the directors of the district are required to submit the proposition to a vote of the electors at a special election, and to order and give notice of such election in a manner particularly prescribed.

As the validity of the bonds when issued depends upon the regularity of the proceedings of the board, and upon the ratification of the proposition by a majority of the electors, it is matter of common knowledge that investors have been unwilling to take them at their par value while all the facts affecting their validity remain the subject of question and dispute.

To meet this inconvenience,—for the security of investors, and to enable the irrigation districts to dispose of their bonds on advantageous terms, — the supplemental act, under which this proceeding was instituted, was passed.

It provides that the board of directors of any irrigation district may "commence a special proceeding in and by which the proceedings of said board and of said district providing for and authorizing the issue and sale of the bonds of said district, whether said bonds, or any of them, have or have not been sold, may be judicially examined, approved, and confirmed."

The proceding is commenced by the filing of a petition in the superior court of the county in which the lands of the district, or some portion thereof, are situate, praying the confirmation of the proceedings of the directors; whereupon the court is required to make and publish an order stating the prayer of the petition and fixing a time and place for the hearing.

Any person interested may demur to or answer the allegations of the petition; and the issues of law and fact are tried and determined by the court as in other cases, under the ordinary rules of practice.

The court has power upon the hearing to examine and determine the legality and validity of the organization of the district and all matters affecting the legality and validity of the bonds and the order for their sale, and has power to confirm the proceedings in whole or in part, according to the facts.

In this case the proceeding in the superior court re-

sulted in a judgment affirming the regularity of the organization of the respondent as an irrigation district, and the legality and validity of its orders for the issuance of its bonds to the amount of eight hundred thousand dollars, and for the sale of four hundred thousand dollars thereof.

The defendant, a resident and property owner of the district, who contested the validity of the respondent's proceedings, appeals from the judgment of the superior court, and from an order denying his motion for a new trial.

Numerous errors are assigned and argued, but they are all involved in, and may be disposed of by, a consideration of a few general propositions.

1. It is contended that there was no sufficient notice of this proceeding to give the superior court jurisdiction to render a judgment binding upon the lands of the district and their owners. There seems to be a claim under this head, though it is not particularly insisted upon, that the notice prescribed by the statute is not sufficient.

The object of the proceeding is of course to compel every person interested in the district, and whose property is to be bound for the payment of its debts, to come into court, and within the time limited present, and submit to judicial investigation, any and all objections he may have to the regularity of the organization of the district, and all other matters affecting the validity of the bonds, so that it may be finally and conclusively determined by a judgment, which neither he nor his successors in interest can thereafter question, whether such bonds are legal and valid or not.

Notice must therefore be given to all persons so interested. But it need not be a personal notice. It not only may be, but to secure the ends of the statute it must be, a general notice by publication in some form. It is unnecessary to take up time in the discussion of this

question, which has long since ceased to be an open one in this state. Without referring to many earlier and later decisions bearing more or less directly upon the point, it is sufficient to say that the statute and proceedings under review in *Lent* v. *Tillson*, 72 Cal. 404, were in all essential respects similar as to their objects and the substance of their provisions to the statutes and proceedings in question here, and the notice of this proceeding prescribed by the statute of 1889 is, for every purpose, as ample and beneficial as the notice to property owners which was in that case held sufficient to give validity to the proceedings by which the lands of the local assessment district were subjected to a lien for the payment of the Dupont Street bonds. The provisions of the supplemental act in regard to this matter are found in section 3, Statutes of 1889, page 212, which reads as follows: "The court shall fix the time for the hearing of said petition, and shall order the clerk of the court to give and publish a notice of the filing of said petition. The notice shall be given and published in the same manner, and for the same length of time, that a notice of a special election provided for by said act, to determine whether the bonds of said district shall be issued, is required to be given and published. The notice shall state the time and place fixed for the hearing of the petition and the prayer of the petition, and that any person interested in the organization of said district, or in the proceedings for the issue or sale of said bonds, may, on or before the day fixed for the hearing of said petition, demur to or answer said petition. The petition may be referred to and described in said notice as the petition of the board of directors of —— irrigation district (giving its name), praying that the proceedings for the issue and sale of the bonds of said district may be examined, approved, and confirmed by said court."

But it is further contended that even conceding the sufficiency of the notice prescribed by the statute, the

notice actually given of this proceeding did not comply with the statute.

In order to a proper understanding of the several objections falling under this head, it is necessary to state generally the facts concerning the organization of the respondent as an irrigation district and its subsequent proceedings.

The petition to the supervisors of Stanislaus County, in which all its lands are situate, for the formation of the district, was filed May 11, 1887, and the order of the board declaring the due organization of the district was made July 18, 1887. Thereupon the directors of the district organized, caused surveys and estimates of the cost of acquisition and distribution of water to be made, and on November 19, 1887, fixed the sum necessary to be raised by the issuance of the bonds of the district at eight hundred thousand dollars. The proposition to issue this amount of bonds was at a special election submitted to a vote of the electors of the district, who, by a considerable majority, voted in favor of the proposition.

Upon ascertaining the result of this election, the directors, on the third day of January, 1888, "resolved and ordered that the bonds of said district, in the sum of eight hundred thousand dollars, be issued in the manner and form prescribed by said act."

After resolving upon the issuance of said bonds, several unsuccessful efforts seem to have been made to dispose of a portion of the amount authorized, and finally, on July 31, 1889, the following resolutions were adopted by the board of directors:—

"It is hereby ordered that the bonds of this district be issued in the amount of $400,000, of the following denominations: 760 bonds of the denomination of $500 each; and 200 bonds of the denomination of $100 each; and that the said bonds shall in form and substance conform to the provisions of the act of the legislature of the state of California entitled 'An act to provide for the

organization and government of irrigation districts, and
to provide for the acquisition of water and other prop-
erty, and for the distribution of water thereby for irriga-
tion purposes,' approved March 7, 1887, and that they
be signed, sealed, and numbered as in said act provided.

"It is further ordered that the bonds of the district
conforming to the provisions of said act and to this order
be prepared, executed, and issued in such manner and
form in all respects that they shall become and be ready
for sale by this board, and on behalf of this district.

"Resolved, That this board hereby declares its inten-
tion to sell the bonds of this district to the amount of
$400,000, to wit: 760 bonds of the denomination of $500
each, and 200 bonds of the denomination of $100 each;
and it is therefore ordered that a notice that sealed pro-
posals will be received by this board at its office in the
city of Modesto up to the hour of 1:30 o'clock, P. M., of
the third day of September, 1889, for the purchase of
said bonds, be published for twenty days before the said
date in the following newspapers: The Daily Alta, pub-
lished in the city of San Francisco; the Record-Union,
published in the city of Sacramento; and the Daily Times,
published in the city of Los Angeles.  On motion duly
made, seconded, and carried, it was ordered that the
board of directors of this district commence special pro-
ceedings in and by which the proceedings of said board
and of said district for and authorizing the sale of the
bonds of said district may be judicially examined, ap-
proved, and confirmed."

In pursuance of this resolution, the original petition
in this case was filed in the superior court of Stanislaus
County on the following day, August 1, 1889.

In this petition the due organization of the district
under the act of March 7, 1887, is alleged to have been
effected on the eighteenth day of July, 1887.  It is alleged
that certain persons—naming them—were then duly
elected and have ever since been the directors of the

district; that all its lands are in Stanislaus County; that as soon as practicable after its organization, to wit, on November 19, 1887, the directors duly estimated the cost of acquiring water. rights and constructing irrigation works for the district at eight hundred thousand dollars, and that it was necessary to issue the bonds of the district to that amount, and that the same should be sold, provided the electors of the districts should vote in favor of their issuance. It is alleged that a special election was immediately called, at which the proposition should be submitted and voted upon, of which the notices required by the statute were duly published and posted; that at the time appointed the election was in fact held; that the returns of said election were duly made and canvassed, and the result duly declared and recorded, and that the vote was 439 in favor of and only 76 against the proposition. The original petition fails at this point to state the next steps actually taken by the board of directors, viz., its resolution of January 3, 1888, to issue the eight hundred thousand dollars of bonds authorized by said vote, and its unsuccessful efforts to sell portions of such issue. Omitting all reference to these proceedings, it alleges the orders and resolutions of July 31, 1889, above quoted, directing the issuance and sale of bonds to the amount of four hundred thousand dollars, and closes with the following prayer: "Wherefore, your petitioner prays that the proceedings aforesaid, for the issue and sale of said bonds of said irrigation district, may be judicially examined, approved, and confirmed by said court."

Upon the filing of this petition, the judge of the superior court made an order fixing the twenty-fourth day of August, 1889, for the hearing of the petition, and ordered the clerk to cause notice of the filing of the petition to be given and published as prescribed by law.

In pursuance of said order, the following notice was issued and published for the prescribed period:—

" In the superior court of the county of Stanislaus, state of California. In the matter of the Modesto Irrigation District, No. 1003.

" Notice is hereby given that the petition of the board of directors of the Modesto Irrigation District praying that the proceedings for the issue and sale of the bonds of said district may be examined, approved, and confirmed was on the first day of August, 1889, filed in said court; that said court fixed as the time for the hearing of said petition the twenty-fourth day of August, 1889, at the court-house in the city of Modesto; and notice is further given that any person interested in the organization of said district, or in the proceedings for the issue or sale of said bonds, may, on or before the day last above mentioned, demur to or answer said petition. By order of the court.

"Attest:              E. D. McCABE, Clerk.
                    "By A. J. LEWIS, Deputy Clerk.
" [Indorsed] Filed October 21, 1889.
                              "E. D. McCABE."

The defendant, on the twenty-fourth day of August, 1889, appeared in the proceedings by his attorneys and filed a demurrer to the petition, which was overruled by the court, and on September 3d he filed an answer, and the issues were set for trial on October 21, 1889, upon which day the trial commenced, and continued until both parties closed their evidence, on October 26th, whereupon the court adjourned until October 28th. When the hearing was resumed on the 28th, and after the argument had commenced, the petitioner asked and obtained leave to file and serve an amended petition, and appellant was granted leave to demur to or answer such amended petition within ten days after service of an engrossed copy.

On the 30th of October the amended petition was filed, which, in addition to the allegations of the original petition, alleged the order of the board of directors of

January 3, 1888, for the issuance of the eight hundred thousand dollars of bonds voted by the electors, and also that the four hundred thousand dollars of bonds ordered issued and sold by the resolution of July 31, 1889, were a part of the amount of eight hundred thousand dollars ordered issued by the resolution of January 3, 1888. The prayer of the amended petition was a repetition of the original prayer.

The appellant, upon being served with the amended petition, again demurred, and his demurrer being overruled, he again answered specifically, denying everything alleged in the petition, and setting up several matters of defense. He then demanded that the whole case should be tried *de novo*, disregarding all the evidence that had been taken. But the court refused this demand, holding that the evidence already taken might properly be considered, but allowing the parties to introduce evidence as to the new matters embraced in the amended pleadings.

In pursuance of this order, the trial was resumed on November 1st, between the petitioner and appellant, and thereupon the cause was argued, submitted, and decided.

No notice of the changes introduced into the petition by the amendments above mentioned was ever published or served in any manner except upon the appellant, but the court in its findings and decree confirmed and declared valid not only the order of July 31, 1889, relating to the issue and sale of the four hundred thousand dollars of bonds, but also the order of January 3, 1888, relating to the issue of eight hundred thousand dollars of bonds, which, as we have said, was mentioned for the first time in the amended petition.

Such being the case, appellant objects to the published notice of the filing of the petition: 1. That it was insufficient as a notice of the original petition; and 2. That it could not possibly confer upon the superior court

any jurisdiction to confirm the proceedings alleged for the first time in the amended petition.

The statute, section 3, requires that the notice shall state, among other things, the prayer of the petition, and it is contended that this notice did not state the prayer of the petition.

But we think the notice contained everything necessary to a substantial compliance with the law.

The prayer of the petition must be read in connection with the petition itself, in order to understand its meaning, but so read, it is clear and intelligible, and is, in effect, a prayer for the judicial examination, approval, and confirmation of all the proceedings set out in the petition, including those for the organization of the district, for they, like the rest, were essential to the legality and validity of the bonds, and accordingly the statute (section 5) expressly confers power and jurisdiction upon the court in all proceedings for the confirmation of bonds to examine and determine, approve and confirm, the proceedings for the organization of the district as well as all other proceedings that may affect the legality and validity of the bonds and the order for their sale.

The prayer, therefore, was sufficient when read in connection with the petition, but to have repeated it in its literal terms in the notice would have been meaningless; and the only way to "state" it was to give its substance, as was done.

Of course to a person entirely ignorant of the law authorizing and regulating the proceeding the notice may have been unintelligible, but it would have been equally so to such a person if the prayer of the petition had been as full and specific as the allegations upon which it was founded, and had been copied *verbatim* in the notice.

A knowledge of the law is, however, imputed to every one interested in the proceeding, and it is decided in *Lent* v. *Tillson,* 72 Cal. 404, that the notices required in

cases of this character are to be construed and aided by reference to the statute.

So read and construed, we think that the notice in this case was in substantial compliance with the statute, and imparted sufficient notice to all the world that the directors of Modesto Irrigation District, No. 1003, would, on the twenty-fourth day of August, 1889, submit the question of its corporate existence and the regularity of all its proceedings for the issuance and sale of its bonds, so far as the same were set out in its petition on file, to the superior court of Stanislaus County, and would ask said court to decree the regularity of all such proceedings; and we think that all persons interested in the district being so notified of the time of the filing of the petition, and of the office in which it remained as a public record, were bound to take notice of its specific allegations, and if they had any objection to the confirmation of the orders and proceedings referred to in the prayer of the petition, that they were required to present their objections to the court at the time and place mentioned in the notice, or be forever precluded—they and their successors — from questioning the validity of the bonds issued in pursuance of such proceedings.

But could the court, without the publication of a new notice for the statutory period, acquire jurisdiction to examine and make a valid confirmation of proceedings not set out in the petition on file when the original notice was published, and to which alone it referred? Or to state the question more precisely, could the court, by giving notice of a petition to confirm an order for the issue and sale of bonds to the amount of four hundred thousand dollars, acquire jurisdiction to confirm an order for the issuance of bonds to the amount of eight hundred thousand dollars?   We do not think it could.

The only answer which respondent makes upon this point to the contention of appellant is, that *he* had notice

of the amended complaint; that he demurred and answered to its allegations, and therefore cannot be heard to object that other persons had no notice.

Of course, in ordinary proceedings intended to fasten a liability upon particular defendants, and in which each may be made independently liable, this would be a sufficient answer. But here the proceeding is *in rem;* its object is to establish the validity of the bonds as against the irrigation district and all persons interested in the district. To be effective for the protection of investors, or the advantage of the district, the judgment must bind all the world. A judgment binding upon the appellant alone would be in effect a nullity, leaving the district in precisely the same position it was in before the proceeding was commenced.

Such being the case, this appellant, as a land-owner of the district, directly interested in the price to be realized upon a sale of its bonds, has a right to insist that the steps necessary to give the court jurisdiction to pronounce a binding decree shall be regularly taken.

And we can see no escape from the conclusion that this decree, so far as it attempts to confirm the order of January 3, 1888, for the issuance of eight hundred thousand dollars of the bonds of the district, is erroneous and void for want of jurisdiction. But we think there is no doubt that the superior court had jurisdiction, acquired by full compliance with the law, to examine into and confirm the order of July 31, 1889, for the issuance and sale of four hundred thousand dollars of the bonds of the district, and that as to that order the decree may be affirmed, if it and the proceedings upon which it was founded were regular and legal.

To sum up on this branch of the case, we hold, with reference to the points presented by appellant, as follows:—

The object of the act of March 16, 1889, is to provide a security for investors, and promote the advantage of

the irrigation districts, by enabling the courts of the state to render a judgment binding on all the world as to the validity of bonds to be offered for sale by such districts.

To obtain such judgment, the petition should set forth the particular order or orders for the issuance and sale of bonds confirmation of which is desired. How fully the preliminary proceedings must be alleged is a question which does not arise here, but with respect to the organization of the district it is only necessary that its due organization and the election of its first board of directors should be alleged in general terms. The prayer of the petition is sufficient if it prays for the examination, approval, and confirmation of the proceedings "aforesaid" for the issuance and sale of bonds of the district, and the notice is sufficient if it states the substance of such prayer, and in other respects conforms to the statute. But the decree of the court cannot go beyond the orders for the issuance and sale of bonds which are alleged in the petition, and in case the original petition is amended by setting out other orders for the issuance or sale of bonds, the court will not acquire jurisdiction to confirm such orders without the publication of a new notice of the amended petition.

A decree, however, confirming all the orders alleged in the original and amended petitions is not void for want of jurisdiction as to the orders set out in the original petition merely because no new notice has been given of the filing of the amended petition. If there was due publication of sufficient notice of the original petition, the decree of the court confirming the orders for the issuance and sale of bonds therein specifically alleged, and of all preliminary proceeding affecting their validity, including those for the organization of the district and election of its first board of directors, is within the jurisdiction of the court, and can be assailed only by those who have contested the proceeding, and by them only

upon the ground of prejudicial errors affecting their substantial rights which have been duly excepted to.

In this case, accordingly, we hold that so much of the decree as confirms the order for the issuance of eight hundred thousand dollars of bonds of the district dated January 3, 1888, is void, but that it should be affirmed so far as it confirms the order of July 31, 1889, for the issuance and sale of four hundred thousand dollars of the bonds of the district, unless in conducting the proceeding the superior court committed error to the prejudice of this appellant.

The first point urged by the appellant upon this branch of the case is, that the superior court erred in confirming the proceedings of the board of supervisors in organizing the district, because said board, by including therein the city of Modesto, had violated the following provision of the Wright law: "Nor shall any lands which will not, in the judgment of said board, be benefited by irrigation by said system be included within such district." (Stats. 1887, p. 30, sec. 2.)

It appears from the record that the district as originally organized contained about one hundred and eight thousand acres of land, including the city of Modesto, a town covering about two thousand acres, and having about three thousand inhabitants and about six hundred dwelling-houses, besides shops, stores, etc.

One proposition of the appellant seems to be that the mere fact of the corporate existence of a town or city, though situate in the midst of a district susceptible of irrigation by one system, necessarily deprives the board of supervisors of the county of the power to include any of the lands within the corporate limits of such city or town in an irrigation district. We say this seems to be a proposition of the appellant, because, although it is not expressly stated in terms, it appears to be necessary to sustain his contention; for if it lies within the discretion of the board to include in an irrigation district any

part of the lands of a town or city upon the ground that in their judgment such part will be benefited by irrigation under the system proposed, and if the judgment of the board upon the question of benefits is conclusive of the fact, — as we shall show that it is, — there is no ground upon which a court can say that an order including all the lands of a city or town in such district is void.

The idea of a city or town is of course associated with the existence of streets, to a greater or less extent lined with shops and stores, as well as of dwelling-houses, but it is also a notorious fact that in many of the towns and cities of California there are gardens and orchards inside the corporate boundaries requiring irrigation. It is equally notorious that in many districts lying outside the corporate limits of any city or town there are not only roads and highways, but dwelling-houses, outhouses, warehouses, and shops. With respect to those things which determine the usefulness of irrigation, there is only a difference of degree between town and country. The advantages of irrigation to a town like Riverside, in San Bernardino County, for instance, no one could deny, and the differences between such a town and those places where irrigation would be as manifestly out of place are not marked by any hard and fast line which would enable a court to lay down a rule of discrimination. The question whether in any particular case a town will as a whole be benefited directly by the application of water for irrigation is in its nature, and under existing conditions must remain, a question of fact to be decided by that tribunal to whose discretion it has been committed by the legislature. It is very certain that the legislature intended that cities and towns should in proper cases be included in irrigation districts, for the act expressly provides for the assessment and taxation, according to their value, not only of city and town lots, but also the improvements thereon.   (Stats. 1887, p. 37,

secs. 18 et seq.) And this feature of the law was made
an argument against its constitutionality in the case of
*Turlock Irrigation District* v. *Williams*, 76 Cal. 360, in
which its constitutionality was affirmed. Such having
been the intention of the legislature, as is clearly appar-
ent, and it being equally clear and notorious as matter
of fact that there are cities and towns which not only
may be benefited by irrigation, but actually have in
profitable use extensive systems for irrigating land
within their corporate limits, it cannot be denied that
the supervisors of Stanislaus County had the power to
determine that the lands comprising the city of Modesto
would be benefited by irrigation, and might be included
in an irrigation district.

There was, it appears, a large majority of the electors
of Modesto in favor of such inclusion, but the appellant
and others owning buildings objected to being included
in the district, on the ground that their lots covered with
stores, shops, and warehouses would not be benefited.
If this objection was good ground for excluding the city
from the district, it is probable that no district could ever
be successfully organized, for, in the nature of things,
an irrigation district must cover an extensive tract of
land, and no matter how purely rural and agricultural
the community may be, there must exist here and there
within its limits a shop or warehouse covering a limited
extent of ground that can derive no direct benefit from
the use of water for irrigation. Here, again, the differ-
ence between town and country is one of degree only,
and a decision in the interest of shop-owners in towns,
that their lots cannot be included in an irrigation dis-
trict, would necessarily cover the case of the owner of
similar property outside of a town.

It is nowhere contended by the appellant that in
organizing irrigation districts it is the duty of the super-
visors to exclude by demarcation every minute tract or
parcel of land that happens to be covered by a building

or other structure which unfits it for cultivation, and certainly the law could not be so construed without disregarding many of its express provisions and at the same time rendering it practically inoperative.

We construe the law to mean that the board may include in the boundaries of the district all lands which in their natural state would be benefited by irrigation, and are susceptible of irrigation by one system, regardless of the fact that buildings or other structures may have been erected here and there upon small lots which are thereby rendered unfit for cultivation at the same time that their value for other purposes may have been greatly enhanced.

So construed, we can see no objections to the law upon constitutional grounds or grounds of expediency.

As to owners of such property, it seems reasonable to assume that they must participate, indirectly at least, in any benefits the district may derive from the successful inauguration of a system of irrigation; but aside from this, the law contains an express provision designed to secure to them a benefit exactly corresponding to any burden to which they may be subjected, and in that respect is far more equitable than many of the assessment laws which have been upheld here and elsewhere. The provision referred to is this: Every tax-payer of the district receives a portion of all the water distributed exactly equivalent to his proportion of the total tax levied, and this water is his to use or to sell, as he may elect, so that if his lot is not fit for cultivation, he nevertheless gets a full equivalent for the tax assessed to him. (Stats. 1887, p. 34, sec. 11.)

Upon these grounds we hold that a city or town or a portion thereof may, in a proper case, be included in an irrigation district.

As to what is or is not a proper case for such inclusion, the decision of that question has been committed to the several boards of supervisors, whose discretion is not subject to the control of any court. Upon matters

affecting their jurisdiction, the orders of the board of supervisors may be open to review, but upon the question of fact as to what lands will or will not be benefited by irrigation, their decision is final and conclusive. (See sec. 2 of the act, Stats. 1887, p. 30.)

The formation of irrigation districts is accomplished by proceedings so closely analogous to those prescribed for the formation of swamp-land reclamation districts that the decisions with respect to the latter are authority as to the former, and we cite as conclusive of this point *People* v. *Hagar,* 52 Cal. 181, and *People* v. *Hagar,* 66 Cal. 60. Many other decisions to the same effect are cited in the briefs of counsel, but we deem it unnecessary to refer to them here.

The superior court did not err, therefore, in refusing to allow the appellant to introduce evidence for the purpose of proving that his and other lots in the city of Modesto would not be benefited by the proposed system or any system of irrigation. Nor did the court err in refusing the offer of appellant to prove that the board of supervisors wrongfully included the city of Modesto in the irrigation district for the purpose of carrying out the scheme of organization against the wishes of the farmers outside of the city.

To entitle the appellant to prove that the board and its members, well knowing that the lands of the city would not be benefited by irrigation, had nevertheless included them for the corrupt purpose suggested, and not in the exercise of their honest judgment and discretion, the facts constituting the fraud should have been fully pleaded in the answer. But no such facts as he offered to prove were pleaded.

It is indeed alleged that the order including the city was not made in the exercise of the judgment and discretion of the board, but contrary thereto. This allegation is part of a separate defense in which it is coupled with other allegations going to show that the lands of

the city would not be benefited by irrigation, but it is nowhere alleged that the board or any of its members actually believed at the time they ordered such lands to be included in the district that they would not be benefited. The court therefore properly sustained the objection that the offered evidence was immaterial.

As to all such matters as were alleged in the answer, the evidence shows that the board of supervisors acted with the utmost deliberation upon the petition for the organization of the district; that they heard and considered numerous objections, and the testimony offered in support of them, and did not make their final decision until the time allowed for deciding had nearly elapsed.

The next point urged by the appellant arises out of the fact that after the original organization of the district, including one hundred and eight thousand acres, and after the proposition to issue eight hundred thousand dollars of bonds had been ratified by a vote of the electors of the district, and after the resolution of the directors to issue the bonds to that amount, the board of supervisors had ordered a portion of the district, embracing twenty-eight thousand acres, to be cut off and excluded therefrom.

It is contended that this order, which was one of the proceedings confirmed by the superior court, was void for want of jurisdiction in the board to make it.

The proceedings for the exclusion of lands from an irrigation district of which they form a part are authorized and prescribed by another act, amendatory and supplemental to the Wright act, approved February 16, 1889. (Stats. 1889, p. 21.)

This act provides for the filing of a petition for exclusion by owners of lands within the district, notice of the filing of such petition, and time and place of hearing, the presentation of objections by parties interested, and in certain cases for a submission of the question of exclusion to a vote of the electors of the district.

Among other things, it is provided that if there be

any outstanding bonds of the district, no order of exclusion can be made without the consent, in writing, of the holders of such bonds, acknowledged as deeds of conveyance are required to be acknowledged.

It is contended by the appellant that at the time the petition for the exclusion of said twenty-eight thousand acres was filed, and during the greater portion of the time the notice of the hearing was being published, there were outstanding bonds of the district, and that no written consent of the holders of said bonds was ever given to the making of the order.

But the fact is, there never were any outstanding bonds of the district. Its bonds, as above stated, had more than once been offered for sale, and at one time a bid for fifty thousand dollars of the bonds had been made by Tucker and Perley, and formally accepted by the directors. But the evidence shows that at the time of the making and acceptance of this bid there was an understanding between the bidders and the directors that the former were not to be held to their offer unless they could succeed in negotiating a sale of the bonds to some outside party, and as they had failed to do so, the bonds had never been issued or paid for. And prior to the making of the order of exclusion, Tucker and Perley had, upon their written request, been released from their offer by formal resolution of the board of directors.

Such being the case, it is clear that there had not only never been any outstanding bonds of the district, but that at the date of the order of exclusion there was not even a subsisting contract for the issuance of the bonds.

We cannot perceive, therefore, that the court committed any error in decreeing the validity of the order of exclusion. But even if the decree had been in that respect erroneous, it is by no means clear that it would have been material; for the order of exclusion is not one of the orders set out in the petition of the respondent confirmation of which is prayed. It is alleged for

the first time in the answer of appellant, and its invalidity charged as matter of defense and as a ground for refusing confirmation of the order for the issuance and sale of bonds. It is therefore material only so far as its validity or invalidity affects such order for the issuance and sale of bonds, and we do not understand how that order would be any more or less valid whether the order of exclusion was legal or not.

The superior court did not err in holding that the four hundred thousand dollars of bonds ordered to be issued and sold by the order of July 31, 1889, was part of the issue of eight hundred thousand dollars of bonds proposed and voted and ordered issued January 3, 1888. The evidence fully sustains the finding, and there is nothing really opposed to it except the mere fact that the resolution of the board of directors does not, in express terms, couple the issuance and sale of the four hundred thousand dollars of bonds with the previous proceedings authorizing the issuance of eight hundred thousand dollars of bonds. The fact that when the proposition for the issuance of eight hundred thousand dollars of bonds was ratified by a vote of the electors the plan in contemplation was to bring water from the Stanislaus River sufficient to irrigate one hundred and eight thousand acres, and that the order for the issuance and sale of four hundred thousand dollars of bonds was made after a change in the district and a change of plans contemplating the bringing of water from the Tuolumne River sufficient only for the irrigation of eighty thousand acres, does not destroy the relation between the last order for the sale of bonds and the original authority to issue them. The authority to issue bonds is wholly independent of the source of supply of water or any plans for obtaining it. There is nothing in the law to prevent the directors from changing their plans in this respect whenever they find it to the advantage of the district to do so. And any order they may make for the issuance

and sale of bonds must be referred to the proceedings by which alone such order is authorized, whether they are expressly referred to or not.

The superior court did not err in refusing to try the case *de novo* after the filing of the amended petition. All the evidence that had been taken was applicable to the issues formed by the amended pleadings, and indeed the principal object and only effect of the amendments to the petition were to make it conform to the evidence already in. It would therefore have been a mere waste of time, as well as a most unusual practice, to have introduced anew the evidence already before the court.

It is contended that the board of directors never had any authority to issue any bonds of the district, because no legal notice was given of the special election at which the proposition to issue bonds was submitted to a vote of the electors.

The point of this objection is, that the general notice prescribed by section 5 of the Wright act (Stats. 1887, p. 31) was not posted in the office of the board. But this was a special election held under section 15 of the act (page 35), and the notices prescribed by that section were duly given. As we construe the law, that section applies to such special elections, to the exclusion of section 5.

It is contended that this judgment cannot be sustained, because the proceeding was commenced before any bonds had been issued. According to appellant's construction of the supplemental act, no proceeding can be commenced under it until bonds have been actually issued. There may be something in the literal terms of the title and one or two clauses of the act to countenance this construction, but, read as a whole, and with reference to its manifest purpose and the evil it was intended to correct, it must be construed as allowing the proceeding to be commenced as soon as any resolution has been adopted for the issue and sale of bonds.

Finally, it is contended by appellant that the authority originally granted to the directors to issue bonds to the amount of eight hundred thousand dollars, at a time when the district embraced one hundred and eight thousand acres, ended with the order excluding twenty-eight thousand acres; for, he says, even if the legislature intended to bind the new, or reconstituted, district by a vote of the old district, the law to that extent would be unconstitutional. (Citing sections 12 and 13 of article 11 of the constitution of California, and section 10, article 1, of the constitution of the United States.)

If, after this district had actually incurred a debt by the issuance of bonds, a portion of the lands of the district had been excluded without the consent of the owners of the lands remaining, the argument of appellant on this point would have had much force, and would at least have been deserving of serious consideration. But the facts being that at the time of the exclusion of twenty-eight thousand acres from this district it had no debt, and that after notice of the proceeding no objection was made to such exclusion by any person, there is no basis for any claim of injustice or violation of constitutional rights. The identity of the district was not destroyed by the exclusion of a part of its lands. Those who remain in the district will receive all the benefits of the expenditure of the proceeds of the bonds; they will not be compelled to pay for anything for the benefit of others. Nor is there anything in the law to compel the directors of the district as reconstituted to expend the whole amount of bonds authorized, if such amount shall not be needed. The provision of section 15 for the issuance of the bonds voted is merely directory, leaving it in the discretion of the board to issue and sell such amount of bonds, within the amount voted, and at such times as they may find expedient.

Upon a review of the whole case, we conclude that all the proceedings examined, approved, and confirmed by

the superior court were regular and valid, but that the court did not acquire jurisdiction to confirm the order or resolution of January 3, 1888, for the issuance of eight hundred thousand dollars of the bonds of the district in this proceeding. That order, however, is not essential to the validity of the order for the issuance and sale of four hundred thousand dollars of bonds, which depends upon and is sustained by the other proceedings for the organization of the district and the issuance of bonds.

It is therefore ordered that the judgment and decree of the superior court be and the same is hereby modified by striking out so much thereof as confirms said order of January 3, 1888, for the issuance of eight hundred thousand dollars of bonds of respondent, and as so modified, the said judgment and decree, as well as the order overruling appellant's motion for a new trial, are affirmed.

McFARLAND, J., PATERSON, J., and SHARPSTEIN, J., concurred.