Submitted on briefs January 14, affirmed January 29, 1924.

# BUTLER & THOMPSON CO. *v.* CITY OF ASH-LAND ET AL.

### (222 Pac. 346.)

**Waters and Watercourses—Irrigation District's Sale of Surplus Water to City Held not Invalid Because not Restricting Use.**

1. An irrigation district's contract to furnish a city surplus water over and above the needs of the district was not illegal because not restricting the use of the water to irrigation, in view of Sections 7328, 7337, Or. L. (Laws Sp. Sess. 1921, Chap. 2), which show no intention to restrict the right of an irrigation district to appropriate water for land not included therein, but do show an intention to require the beneficial use of all water over and above the needs of the irrigation district.

**Waters and Watercourses—Irrigation District's Sale of Water to City not Illegal, Though Placing City on Parity With Members in Case of Shortage.**

2. Where an irrigation district agreed to furnish a city a specified amount of water the contract *held* not illegal, though placing the city, a nonmember, on equal footing with the members of the district in case of shortage of water, in view of Sections 5790, 7316, Or. L.; the city being a common user along with the individual owners and being required to pay its proportionate share of expense for all that it acquired.

From Jackson: C. M. THOMAS, Judge.

In Banc.

This is an appeal from a decree dismissing the complaint of the plaintiff. The plaintiff is a corporation, the owner of land within the boundaries of the defendant Talent Irrigation District, and is also a taxpayer of the defendant City of Ashland. The defendant City of Ashland has found it necessary to augment its water supply. It now receives its water supply from Ashland Creek and the supply is inadequate during the dry season for irrigation purposes. The supply is sufficient for strictly household purposes. The supply of water appropriated by the City of Ashland from Ashland Creek is diminished by the prior rights of the land owners who had appropriated water for irrigation and the Southern Pacific Company which had appropriated water for its engines and other purposes.

The Talent Irrigation District is one of the earliest organized districts in Oregon. It has two units in successful operation. It has in contemplation a third unit to be supplied from Emigrant Creek. The acreage within the boundaries of the third unit is not sufficiently large to justify the expense of impounding the waters of Emigrant Creek. Sufficient water, however, can be stored in Emigrant Creek to supply the third unit and also supply 600 acre-feet to the City of Ashland, which will be ample for the purposes of irrigation within the City of Ashland.

The city and the district have agreed upon the terms of a contract whereby the city agrees to take from the irrigation district 600 acre-feet to be delivered at the boundary of the city by the district. This quantity has been computed by the parties in-

terested as the amount of surplus water over and above the needs of the district. The contract is tentative subject to the approval of the legal voters of the city and district respectively. The proposed contract is annexed to and made a part of the complaint. After the water has been delivered to the city at its boundary the district loses all control thereof and the city may use it for any purpose it sees fit. By the terms of the proposed contract the city is to pay to the district outright for the 600 acre-feet. The amount to be paid is estimated at $105 per acre-foot, but the contract provides that the city shall pay for the water the actual cost to the district for delivering to the city at its boundary the 600 acre-feet. That is to say, the amount to be paid by the City of Ashland to the irrigation district shall bear the same proportion to the cost of the project of constructing the necessary works to impound the water and conduct it to the users within the district and boundary of the city, as the quantity of water so delivered to the city shall bear to the entire quantity of water made available by the improvements.

The contract further provides that the city shall bear its proportionate expense of maintaining the improvements, but is not to bear any part of the interest charged against the district, nor any expense incurred by the district on account of delinquent users of water within the district.

The contract further provides that in case of a shortage of water the City of Ashland shall share *pro rata* with the users thereof within the said unit No. 3.

The plaintiff contends that the proposed contract is illegal in the following particulars:

## "14.

"That the common council of the City of Ashland, or the mayor and city recorder of the said City of Ashland have no authority to enter into the said contract aforesaid.

## "15.

"That the officers of the Talent Irrigation District and the said Talent Irrigation District, have no authority to execute and sign contract as set forth in said Exhibit 'A' on behalf of the said district.

## "16.

"That the sale of water as contemplated in said contract is recited as being made under the authority granted in Section 7337, Olson's Oregon Laws; that said contract by its terms, allows the city of Ashland to use the water for any purpose it may see fit and without limitation or restriction that it shall be used for irrigation purposes only; that said Section 7337, Olson's Oregon Laws, contemplates the sale of water for irrigation purposes only and that therefore, the said contract would be illegal in the particular that it purports to sell water for other than irrigation purposes.

## "17.

"That in paragraph 9 of said contract, it is specified that in case of a shortage of water in the systems of the district, then and in that event, the city shall only be entitled to its *pro rata* share during the period of such shortage; that the directors of the Talent Irrigation District, or the Talent Irrigation District have no authority to stipulate that the City of Ashland shall be entitled to a *pro rata* share during the period of any shortage and your complaint alleges that in the event of any shortage, that the stockholders in the Talent Irrigation District would be entitled to have their irrigation wants fully satisfied prior to the city's receiving any water under said contract, and that on this account, in case of any water shortage, the contract would be valueless to the City of Ashland."

The defendant City of Ashland appeared by answer. The answer admits all the facts set out in the complaint but denies the conclusions as set out in paragraphs 14 to 17, inclusive, and by way of affirmative matter alleges the following:

"That the City of Ashland, by its officers, has conducted and caused to be conducted a thorough investigation as to the best means of relieving such shortage of water and has determined that the most practicable manner of taking care of the situation economically and satisfactorily and providing for the future, is, if possible, to secure from the Talent Irrigation District sufficient water to furnish irrigation water to those desiring it and take care of the other uses of water in the city aside from domestic use, such as supplying prior rights in Ashland Creek, which is the stream from which the present domestic water supply is obtained, supplying water to the Southern Pacific Company for use in its water tanks and supplying water in the display fountains and for irrigation in the parks of the city."

The reply admits the allegations of the affirmative answer but denies the legality of the contract. The defendant irrigation district appeared by general demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of suit against the demurring defendant. The case was submitted upon the pleadings. The demurrer was sustained and the plaintiff refused to plead further. Findings and conclusions were made and a decree rendered dismissing plaintiff's complaint.

The assignments of error are as follows:

"1st. That the court erred in sustaining the demurrer to the complaint interposed on behalf of the Talent Irrigation District.

"2d. That the court erred in denying the relief demanded by plaintiff in its complaint, and in dismissing plaintiff's suit."

AFFIRMED.

For appellant there was a brief over the name of *Mr. E. D. Briggs.*

For respondents there was a brief over the name of *Mr. Wm. M. Briggs.*

COSHOW, J.—The appellant does not attempt to support its allegation that the defendant city is without authority to enter into the contract involved in this suit. That a city has authority to purchase water for its inhabitants is too well established to require citation of authorities. No further consideration will be given to that contention.

The appellant submits two questions by its appeal:

1. Is the contract illegal in that it contemplates the sale of water for all purposes instead of restricting the use of the water to irrigation purposes? We answer, no. No authority has been cited to that effect. We have not been able to find such authority. The proposed contract does not provide for the sale of water generally by the irrigation district. The irrigation district, by appropriating 600 acre-feet of water for the city, will be able to construct the necessary works to enable it to supply the third unit of its territory with sufficient water at a price which the land owners can afford to pay.

If it be conceded that the irrigation district can sell the water at all, then it follows that it has no control over the water after it shall have been delivered to the city. This is not an academic question. It is a concrete and practical one. The in-

tention of the legislature was to authorize irrigation districts to appropriate water for land outside of the district. The original act contains these provisions:

" * * Any land owner may assign the right to the whole or any portion of the waters so appropriated to him for any one year." Gen. Laws 1895, p. 13, § 11, p. 19.

Although the act was amended several times, the quoted excerpt remained a part of the law until 1917 when the legislature repealed the original act and enacted a new law governing irrigation districts and Section 7337, Or. L., is Section 33 of the later act: Laws 1917, Chapter 357.

Section 7337, Or. L., among other things, provides:

"An irrigation district may provide for and furnish water for lands not included within such irrigation district and also lands within said district but not subject to assessment thereby, upon receiving proper compensation therefor, and said district may dispose of and furnish electric power in or out of said district upon receiving proper compensation therefor; * * "

Suffice it to say that no intention is manifest on the part of the legislature to restrict the right of the irrigation district to appropriate water for land not included in the district. Indeed, the change in the law indicates an intention to commit to the district, instead of the individual users, the power to appropriate and distribute water for land not included in the district as well as land within the district.

The entire section forbids the restricted construction urged by appellant. The expression "Furnish water for lands not included within such irrigation district" does not necessarily mean that the water

109 Or.—44

should be used exclusively for irrigation. A part of this same sentence also provides, "and also lands within said district but not subject to assessment thereby." All land within the district susceptible to irrigation from a common source is subject to assessment: Section 7328, Or. L.; Laws Special Sess. 1921, Chap. 2. It follows, necessarily, that the water to be furnished to lands within the district, but not subject to assessment, is to be used for other purposes than irrigation; thus clearly implying an intention on the part of the legislature not to restrict the use of the water appropriated by irrigation districts altogether to irrigation.

That the main purpose of the law is to provide for irrigating land is not overlooked. A broad principle supporting and controlling all legislation regarding irrigation is the utilization of the water. No water is to be appropriated that cannot be applied to a beneficial use. No water should be allowed to be wasted. The legislative intent is to require beneficial use of all water appropriated. If not required for irrigating land within the district, it should be put to some other beneficial use. This intent is further manifested in the same sentence by providing for sale of the electric power. It is not hard to imagine conditions whereby the waters being appropriated for irrigation can also be economically used to generate electric power. The legislature manifested an intention in Section 7337, *supra,* to encourage such a use of the water. All these considerations refute the contention of the appellant.

The original act providing for the organization of irrigation districts is a substantial copy of the Wright Act of Californa: *Little Walla Walla Irr. Dist.* v. *Preston,* 46 Or. 5 (78 Pac. 982). The Wright Act was

construed in an exhaustive opinion by Mr. Justice PECKHAM speaking for the Supreme Court of the United States in *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes). From page 162 of the opinion we take the following excerpt:

"The water is not used for general, domestic or for drinking purposes, and it is plain from the scheme of the act that the water is intended for the use of those who will have occasion to use it on their lands. Nevertheless, if it should so happen that at any particular time the land owner should have more water than he wanted to use on his land, he has the right to sell or assign the surplus or the whole of the water as he may choose."

The learned justice also cited, with approval, the opinion of the Supreme Court of California in *Board of Directors* v. *Tregea,* 88 Cal. 334 (26 Pac. 237). In the *Fallbrook Irr. Dist.* v. *Bradley* case counsel for the defendant in error also argued for a strict construction of the words "lands" and "land owners" as used in the Wright Act. The court, however, refused to adopt such a strict construction. The learned circuit judge in the instant case well said:

"The court is thoroughly satisfied that the contract is not only advantageous to both the district and the City of Ashland, but that a refusal to permit it to be carried out, would be striking at the roots of an absolutely necessary development of both city and rural districts of the valley.

"The district can remain as it is, and operate successfully as it is now doing, but the City of Ashland would be placed in a position where it could not procure an available future satisfactory water supply, and additional acreage in the vicinity which cannot profitably produce without water will be de-

prived of an opportunity to attain maximum development.''

A construction producing that result should not be adopted unless the language of the act requires it. That construction would defeat the main purpose of the law, namely, the utilization of the waters of the stream to irrigate arid and semi-arid lands. The irrigation district law is for the common good and should be liberally construed.

2. The second question propounded is: Is the contract illegal in purporting to place a nonmember of the irrigation district upon an equal footing with the members of the district by allowing the city, which is the nonmember, to share *pro rata* with the members of the district in case of a shortage of water? Our answer is, no.

The plan incorporated in the contract attacked by this suit is in harmony with the law governing waters in this state. The city is obligated to pay for its proportion of the water developed from Emigrant Creek. The city proposes to pay that expense by issuing bonds of the city. The land owners of the irrigation district are not obligated to any extent for those bonds. The irrigation district proposes to pay the remaining cost of utilizing the water for its third unit by issuing bonds against the land of the third unit. The taxpayers of the city will not be obligated to any extent by bonds issued by the irrigation district. The city is required to pay for what it acquires and no more. The district is required to pay for what it retains and no more. The contract is eminently fair and just. It would be manifestly unfair if the parties did not share *pro rata* in the water in case of a shortage. The plan is practically a common user by two corporations of

the improvements necessary to a beneficial use of the waters of Emigrant Creek. Both corporations are entitled to appropriate waters of this state. Such a plan is authorized, if not required, by Section 5790, Or. L. The plan improves on a common user in this, that the entire management and control of the means and ways for appropriating the water is committed to one of the parties. All cause for friction is thereby eliminated. The water to be furnished to the city is to be delivered at the boundary of the city where the city assumes absolute control. All control over the water by the irrigation district terminates with the delivery of the water at the boundary of the city.

There is nothing in the contract repugnant to law. The contract is admirably drawn so as to serve and conserve the interests of both the city and the irrigation district. It neither conflicts with any statute of the state to which our attention has been directed, nor does it in any regard violate public policy. The taxpayers of the irrigation district have no cause for complaint because of this provision of the contract. The city is not thereby acquiring an undue advantage. The spirit guiding the distribution of water is equality. The city pays for its portion of the burden; it is entitled to its portion of the benefits. The city becomes a common user along with the individual land owners. They receive water in proportion to their holdings. They are required to pay in the same proportion. The water is distributed accordingly whether it is abundant or sparse. As well said by the learned circuit judge in the instant case:

"As stated, the contract is entirely made under the supervision of the voters of the district, and

subject to their approval. If the voters are not satisfied with the contract, they have ample opportunity to defeat the bond issue necessary to carry out the plans under which the water would be stored and thereafter furnished to the city, on the contrary, if the whole matter is placed before the voters of the district, which it will be when the bond issue is submitted, and the voters approve the plans and indirectly the contract, it would seem that no objection could fairly be raised against it.''

The law commits to the board the management of the affairs of the district and empowers it to regulate the distribution and use of water among the owners of lands within the district, and, generally, to perform all acts necessary to carry out fully the purposes of this act: Section 7316, Or. L.

This is ample authority for the board to furnish water to lands without the district, as provided in Or. L., Section 7337.

The decree of the Circuit Court is affirmed.

AFFIRMED.