[No. 19368. In Bank.—March 11, 1895.]

DIRECTORS OF FALLBROOK IRRIGATION DISTRICT, APPELLANTS, *v.* HENRIQUE B. ABILA, RESPONDENT.

IRRIGATION DISTRICT—PROCEEDINGS FOR CONFIRMATION—INSUFFICIENT PETITION FOR ORGANIZATION.—Where a petition for the organization of an irrigation district was not signed by fifty freeholders owning lands in the district as required by the "Wright act," it is fatal to the organization, and a proceeding to confirm it cannot be maintained.

ID.—QUALIFICATION OF SIGNERS—OWNERS OF RESIDENCE LOTS.—*Quære*, whether the owners of small residence lots in towns and cities are such "owners of lands," within the meaning of the Wright act, as to make them qualified signers of original petitions for the organization of an irrigation district.

ID.—TENANTS IN COMMON.—It seems that one of several tenants in common is not to be considered as an owner of land within the meaning of the Wright act, but the question is left open.

ID.—SIGNATURE TO PETITION BY MARRIED WOMAN—COMMUNITY PROPERTY.—Where a deed was made to a married woman for a money consideration, prior to the amendment of 1889 of section 164 of the Civil Code, the land conveyed by it was presumably community property, and, where the evidence shows that it was not purchased with her separate funds, she is incompetent to sign a petition for an irrigation district as an owner of the property.

ID.—STIPULATION—ESTOPPEL.—A stipulation evidently intended only to admit that the title to the land had passed to the wife through several conveyances, and not admitting that she took it as her separate property, does not estop the defendant from showing that the land was community property, especially where the case was tried by consent, upon the theory that the stipulation did not preclude a showing that the land was community property.

ID.—HUSBAND AND WIFE—COMMUNITY PROPERTY.—The wife is not the owner of community property, in any legal sense, during the existence of the marriage, and the husband can control, sell, or mortgage it without her consent.

ID.—SIGNATURE BY HOLDER OF CERTIFICATE OF PURCHASE.—The holder of a mere certificate of purchase from the state for school land within a proposed irrigation district, upon which he has paid only twenty per cent of the purchase money, is not a freeholder owning land, within the meaning of the Wright act, and is not authorized to sign a petition for the organization of such district.

ID.—OWNERSHIP—DEFINITION OF "OWNER."—"Owner," in its general and unrestricted meaning, when used alone, means one who has full proprietorship in and dominion over property, and imports an absolute owner.

ID.—CONSTRUCTION OF WRIGHT ACT.—Words used in a statute are to be given their general and unrestricted meaning, unless the context or the apparent scope and purpose of the statute indicate a limited meaning; and there is nothing in the language of the Wright act, or in its scope, purpose, and intent to intimate that the words "owning lands" were used in any other than their general and unrestricted sense.

APPEAL from an order of the Superior Court of San Diego County granting a new trial.

The facts are stated in the opinion of the court.

*John R. Aitken*, and *Aitken & Smith*, for Appellant.

Defendant, having stipulated that Mrs. Woodbury owned all the rights acquired by Lefever, is estopped from denying the effect of his stipulation. (*Solomon* v. *Reese*, 34 Cal. 28; *Dreyfous* v. *Adams*, 48 Cal. 131; *Donner* v. *Palmer*, 51 Cal. 629; *Grady* v. *Porter*, 53 Cal. 680.) To say that Mrs. Woodbury owned all the rights acquired by Lefever, who is admitted to have been the owner in fee simple, must be construed to be an admission that she had the legal and rightful title. (Civ. Code, sec. 654; *Turner* v. *Cross*, 83 Tex. 218; *Johnson* v. *Crookshanks*, 21 Or. 339.) Moreover, the court should not have considered any but direct and positive evi-

dence to the contrary, if, indeed, it could listen to any. (Wharton on Evidence, sec. 1184; Stevens on Evidence, sec. 17; *Wilson* v. *Spring*, 64 Ill. 18; *Lord* v. *Sherman*, 2 Cal. 502.) The court erred in ruling that the land owned by Mrs. M. J. Woodbury, and in which she had acquired all the rights of her predecessors, was community property, and that she should not be counted among the freeholders who signed the petition, as the evidence shows that the deed was made directly to the wife, with her husband's knowledge and consent. (*Jackson* v. *Torrence*, 83 Cal. 529; *Dow* v. *Gould etc. Co.*, 31 Cal. 653; *Ingersoll* v. *Truebody*, 40 Cal. 603; *Woods* v. *Whitney*, 42 Cal. 359; *Higgins* v. *Higgins*, 46 Cal. 263.) Assuming that the property was community property, still the wife must be held to have a freehold therein. (2 Blackstone's Commentaries, 120; Black's Law Dictionary, title "Freeholder"; Anderson's Law Dictionary, title "Freeholder"; Bouvier's Institutes, title "Freeholder"; Webster's Dictionary; *Bradford* v. *State*, 15 Ind. 347; *Hughes* v. *Milligan*, 42 Kan. 396; *Wyatt* v. *Larimer etc. Irr. Co.*, 18 Col. 298; 36 Am. St. Rep. 280; *Chaplin* v. *Commissioners of Highways*, 126 Ill. 264; *Roseboom* v. *Van Vechten*, 5 Denio, 414; *Eversdon* v. *Mayhew*, 65 Cal. 163.) During the coverture the beneficial interest of the husband and wife in the property is equal, without regard to the fact that it was conveyed to one of these alone. (*Patty* v. *Middleton*, 82 Tex. 586; *Yancy* v. *Batte*, 48 Tex. 46; *Johnson* v. *Harrison*, 48 Tex. 257; *Tiemann* v. *Robson*, 52 Tex. 411; *De Godey* v. *Godey*, 39 Cal. 157. See, also, *Wright* v. *Hays*, 10 Tex. 130; 60 Am. Dec. 200; *Zimpelman* v. *Robb*, 53 Tex. 274; *De Blane* v. *Lynch*, 23 Tex. 25–28; *In re Buchanan's Estate*, 8 Cal. 507; *Cartwright* v. *Hollis*, 5 Tex. 163; *Beard* v. *Knox*, 5 Cal. 252; 63 Am. Dec. 125.) The language of the act is plain and unambiguous, and cannot be altered by construction. (*People* v. *Johnson*, 6 Cal. 501; *Nougues* v. *Douglass*, 7 Cal. 67; *People* v. *Weller*, 11 Cal. 86; *Peña* v. *Vance*, 21 Cal. 149; *Fratt* v. *Woodward*, 32 Cal. 220; 91 Am. Dec. 573; *Guerin* v. *Reese*, 33 Cal. 292; *Shaver* v. *Murdock*, 36

Cal. 297; *Castro* v. *Tennent,* 44 Cal. 258; *Tape* v. *Hurley,* 66 Cal. 474.)   The fact that some of the signers of the petition were the owners of town lots did not invalidate the petition, as a city or town may be included in an irrigation district.   The test is whether the land would be benefited by irrigation.   (*Modesto Irr. Dist.* v. *Tregea,* 88 Cal. 334.)   And the decision of the board of supervisors on this point is final and conclusive.   (*Modesto Dist.* v. *Tregea, supra.*)

*Lee & Scott, Wm. J. Hunsaker,* and *William Darby,* for Respondent.

The ownership of undivided interests by two of the signers, Durbin and Watson, did not qualify them, under the statute, to sign the petition. (*Mulligan* v. *Smith,* 59 Cal. 206; *Pfeiffer* v. *Regents etc.,* 74 Cal. 156; *Kahn* v. *Board of Supervisors,* 79 Cal. 388.)   To qualify a signer of a petition for the formation of an irrigation district he must own land susceptible of irrigation, and a town lotowner is not embraced within the meaning of the act.   (Wright act, sec. 1; *Turlock Irr. Dist.* v. *Williams,* 76 Cal. 368.)   The mere fact that Mrs. Woodbury took the deed in her own name does not prove that she was vested with the title to the property, in the absence of evidence showing that the consideration was paid out of her separate funds or that the deed was intended to vest in her a separate estate.   (*Schuyler* v. *Broughton,* 70 Cal. 282; *Hogins* v. *Boggs* (Col., Nov. 7, 1893), 34 Pac. Rep. 653.)   The amendment of 1889 to section 164 of the Civil Code (which took effect after the date of the deed to Mrs. Woodbury) does not apply to conveyances made before the amendment.   (*Jackson* v. *Torrence, supra; Biggi* v. *Biggi,* 98 Cal. 35; 35 Am. St. Rep. 141; *Jordan* v. *Fay,* 98 Cal. 264.)   The wife has no vested or tangible interest in the community property during coverture, and, therefore, has no estate of freehold in it, so as to make her a freeholder within the meaning of the Wright act.   (Platt on Property Rights of Married Women, sec. 38, p. 122; *Greiner* v. *Greiner,*

58 Cal. 119; *People* v. *Swalm*, 80 Cal. 49; 13 Am. St. Rep. 96.   See, also, *Lord* v. *Hough*, 43 Cal. 581; *Fuller* v. *Ferguson*, 26 Cal. 567; *Smith* v. *Smith*, 12 Cal. 225; 73 Am. Dec. 533; *Panaud* v. *Jones*, 1 Cal. 514; *Packard* v. *Arellanes*, 17 Cal. 538.)   The signer, Foss, who held a certificate of purchase from the state for school land, on which only twenty per cent had been paid, was not a freeholder, as his interest in the land was neither an estate of inheritance nor for life.   (Civ. Code, sec. 765.) A certificate of purchase does not in fact pass the title to the land, but is only evidence of a title which cannot be denied by a mere trespasser where the holder of the certificate is attempting to enforce or defend his right to the possession.   (*Taylor* v. *Weston*, 77 Cal. 540; *McFaul* v. *Pfankuch*, 98 Cal. 400; *Lynch* v. *Brigham*, 49 Cal. 137; *Davidson* v. *Cucamonga F. & L. Co.*, 78 Cal. 4; *Miller* v. *Prentice*, 82 Cal. 104; *Trimmer* v. *Bode*, 82 Cal. 647; *Gilson* v. *Robinson*, 68 Cal. 542.)

*William Darby, amicus curiæ.*

McFARLAND, J.—This is an action brought by the directors of an alleged irrigation district to have the court approve and confirm all the proceedings of said district, including the form of certain proposed bonds, in accordance with the provision for such an action to be found in the " confirmation act," which is supplemental to the statute generally known as the " Wright act."   The court below rendered judgment for the plaintiffs, but on motion of defendant, Abila, who was a landowner in the district, a new trial was granted, and plaintiffs appeal from the said order granting the new trial.

The motion for a new trial was based upon several grounds, but it appears that it was granted upon the sole ground that the petition for the organization of the district was not signed by fifty " freeholders owning lands" in said district, as required by said Wright act.

It is not contended by appellants that more than fifty-one qualified persons signed said petition; and, there-

fore, if any two of said persons were not qualified the order must be affirmed. Respondent attacks the validity of the petition upon various grounds, but his main objections to the qualifications of certain signers are: 1. That eleven were merely owners of small town lots in the village of West Fallbrook; 2. That several were merely owners of undivided interests in certain tracts of land in the district as tenants in common; and 3. That two of the signers, A. J. Foss and Mrs. M. J. Woodbury, were not qualified for reasons hereinafter stated.

Under the view which we take of the third objection above stated it will not be necessary for us to determine definitely the first two; and as they present important questions in which, no doubt, the people of other irrigation districts are interested, we deem it best to reserve them for further argument and consideration. It may be said, however, that the case of *Modesto Irr. Dist.* v. *Tregea,* 88 Cal. 334, is not to be taken as an absolute adjudiction that holders of small residence lots in towns and cities are such " owners of lands" within the meaning of the Wright act as makes them qualified signers of original petitions for the organization of districts. That case merely holds that, " in a proper case," the board of supervisors may include a town or city lot within the boundaries of an irrigation district. How far the reasoning of that case would support appellants' contention must be considered as an open question. It must also be left as an open question whether or not a tenant in common is to be considered as an owner of land within the meaning of the Wright act. The legislature when enacting a statute must be presumed to act with knowledge and in view of general and well-established principles of law; and whether or not the legislature when passing the Wright act intended to abrogate the fundamental principle that one tenant in common cannot create a charge upon the common land is certainly a very grave question. It is evident that if one tenant in common can overrule all his other cotenants, or if, of a

large number of tenants in common of one tract, each is individually a qualified signer of the petition, many complications might arise under which much injustice would come to other owners of land. (See *Mulligan* v. *Smith,* 59 Cal. 206; and *Pfeiffer* v. *Regents,* 74 Cal. 156.) But these questions, as before stated, are reserved.

`٠` With respect to the signer, Mrs. Woodbury, the facts are that she was a married woman, and had no interest in the land for which she signed other than that of a wife in community property. It is true that the conveyance of the land for which she signed was made to her, but the deed was made for a money consideration, and, presumably, the land conveyed by it was community property. (*Schuyler* v. *Broughton,* 70 Cal. 282.) There was no attempt to show that she purchased it with her separate funds, and the evidence shows that it was not so purchased. (The deed was before the amendment of 1889 to section 164 of the Civil Code.) Appellants contend that respondent is estopped from denying that she was the owner of the land by a certain stipulation which appears in the record, but we do not think so. By the stipulation it was evidently only intended to admit that the title to this particular piece of land had passed through several mesne conveyances to her—not that she took it as her separate property. The latter clause of the stipulation gives wide latitude to contest questions of ownership. Moreover, when respondent introduced evidence for the avowed purpose of showing that this land was community property, no objection was made by appellants that he was estopped on this point by the stipulation; and appellants themselves introduced some evidence on the point. The case was, therefore, tried in the lower court, by consent, upon the theory that the stipulation did not preclude a showing that the land was community property.

That the interest which a wife has in community property does not constitute her an owner of land within the meaning of the Wright act is beyond doubt. During the continuance of the community it is a very

impalpable interest, and difficult of definition. It has sometimes been defined as "a mere expectancy, like the interest which an heir may possess in the property of his ancestor" (*Van Maren* v. *Johnson*, 15 Cal. 312; *Greiner* v. *Greiner, supra; People* v. *Swalm*, 80 Cal. 49; 13 Am. St. Rep. 96); although it is, no doubt, more tangible than the mere expectancy of a general heir. In Platt on Property Rights of Married Women it is said: "The wife has no voice in the management of these affairs, nor has she any vested or tangible interest in the community property. The title to such property vests in the husband, and for all practical purposes he is regarded by law as the sole owner." But, however difficult it may be to define or describe the peculiar relation which a married woman bears to community property during the existence of the coverture, it is clear that she cannot be properly said to *own* it in any legal sense, or in any other sense. She has none of the powers of an owner over it. She cannot control or sell, or mortgage, or pledge it. But all these things the husband can do without her consent. It would, therefore, be a great abuse of language to call a married woman the " owner" of community property either in the general or limited meaning of that word.

With respect to A. J. Foss, the facts are that he merely held a certificate of purchase from the state for certain school land within the proposed district, upon which he had paid only twenty per cent of the purchase money. This did not make him a " freeholder *owning land* " within the meaning of the Wright act.

Words used in a statute are to be given their general and unrestricted meaning, unless the context or the apparent scope and purpose of the statute indicate a limited meaning. " Owner," in its general sense, means one who has full proprietorship in and dominion over property. In Bouvier's Law Dictionary it is said that: "The word 'owner,' when used alone, imports an absolute owner." In *Johnson* v. *Crookshanks*, 21 Or. 339, which was an action of ejectment, the point was as to the

meaning and sufficiency of an averment in the complaint that plaintiff was "the owner" of the demanded premises.    The court held it sufficient and said: "This is undoubtedly an allegation of title in plaintiff.    The word 'owner' has a definite meaning, and is one who has dominion over a thing which he may use as he pleases, except as restrained by law or by agreement.    (Anderson's Law Dictionary, title 'Owner.')    The precise meaning, perhaps, depends upon the nature of the subject matter, and the connection in which it is used; but, when applied to real estate, without any qualifying words, in common as well as legal parlance, it *prima facie* means an owner in fee."    (Authorities cited.)    It is clear that Foss was not such an owner.    He had merely a contract to purchase a piece of land from its owner, having paid a small amount of the purchase money. The state was the owner.    He had merely a contingent possibility of becoming owner at some future time upon his performance of certain acts.    Even his right to purchase is not absolute, for any other applicant to purchase the land from the state may contest his right, and "the certificate of purchase is not of itself a bar to inquiry as to the rights of the person to whom the certificate was issued."    (*Taylor* v. *Weston,* 77 Cal. 534.)    It is said that he can sell the land; but he cannot sell *the land.* He can sell or assign only the certificate of purchase and the right acquired thereunder, and such sale or assignment must be reported to the registrar of the land-office.    (Pol. Code, secs. 3515, 3516.)    If he does not make deferred payments as required, there is a strict foreclosure, the certificate of purchase is annulled, and "the land is again subject to entry and sale."    (Pol. Code, secs. 3548, 3554.)    It is true that the certificate is declared to be evidence of title, but that only protects him against a mere intruder.    When he is confronted by one who has the right to inquire into his title and ownership the latter must be determined upon the real facts.    In this case there was no patent for the land. In *Manly* v. *Howlett,* 55 Cal. 94, it was said that "the

statute of limitations cannot be held to have commenced running prior to the date of the patent." Certificates of purchase under the United States land system are not issued until the entire purchase money has been paid; and cases arising under that system are not in point. (*McFaul* v. *Pfankuch*, 98 Cal. 403.)

Of course there are certain kinds of qualified ownerships (sometimes so called) arising out of peculiar relations and necessities. For instance, bailees have some kind of property in the goods bailed, may maintain replevin for them, and their interests in the goods is sufficient proof of the averment of ownership in prosecutions for larceny or robbery. So tenants for years of land are, under certain circumstances and for the purposes of certain special statutes, considered as qualified owners; they may maintain ejectment or trespass, are entitled to proportionate shares of condemnation money, are subject to certain lien laws, etc. But there is nothing in the language of the Wright act, or in its scope, purpose, and intent, to intimate that the words " owning lands" were used in any other than their general sense as above stated. On the other hand, when we consider the character and purpose of the Wright act, and the great importance which attaches under it to the execution of a valid petition, many obvious reasons are suggested why the said words should *not* be taken in a limited or qualified sense. The act contemplates the raising of large revenues by the issuance of bonds which are to be satisfied, not by general taxation, but by assessments and liens upon the lands of the district; and after the filing of a valid petition the amount of these bonds and liens is to be determined by the qualified electors of the district, whether landowners or not. The petition is the initial and jurisdictional point; and, when that has been passed, landowners as such have no more power in the premises. To those, therefore, who refuse to sign the petition, and who are to have their lands encumbered against their will if the petition be perfected, it is of the highest importance that those who do sign are

owners of land in the general and unqualified sense of the term, so that they may fully appreciate the responsibilities which they are about to incur. Counsel for appellants have placed the stress of their argument on the word "freeholders"; but the words "owning lands," cannot be ignored. For instance, a tenant for the life of another person, however apparently valueless his estate may be, is a "freeholder"; but it is doubtful if he be an owner of land within the meaning of the Wright act, with power, by signing the petition, to bind the reversioner or remainderman upon whom the real burdens imposed under the act must fall. The legislature has since changed the words "freeholders owning lands," to "holders of title or evidence of title." (Stats. of 1891, p. 142.)

We gather from the briefs that the court below granted the new trial upon the point of the disqualification of said Woodbury and Foss; and, as we agree with the court on that point, the order must be affirmed.

The order granting a new trial is affirmed.

HARRISON, J., GAROUTTE, J., and VAN FLEET, J., concurred.