## EAMES v. BOARD OF COM'RS OF CACHE COUNTY et al.

No. 3679.   Decided July 5, 1921.   Rehearing Denied July 28, 1921.
(199 Pac. 970.)

1. STATUTES—INTENT TO BE DETERMINED FROM LANGUAGE USED UNLESS MEANING IS DOUBTFUL. It is the duty of the court, according to its best knowledge and understanding, to declare the law as it finds it, and determine the intent and purpose thereof from the language used by the Legislature in expressing such purpose and intention, and this is the cardinal rule of construction, and should not be departed from unless the terms used are so ambiguous or confusing as to render the meaning of the language doubtful, in which case it becomes the duty of the court to resort to other rules of construction.

2. WATERS AND WATER COURSES—STATUTORY NUMBER OF QUALIFIED LANDOWNERS MUST SIGN PETITION FOR IRRIGATION DISTRICT. A board of county commissioners cannot under the provisions of Laws 1919, c. 68, organize and establish an irrigation district, where the proceedings were initated by the landowners themselves, and neither 50 nor a majority of the owners of land or holders of title or evidence of title to land requiring water within the district signed the petition for the organization of the district.

Proceedings by Ezra Eames to prohibit and restrain the Board of County Commissioners of Cache County from proceeding further in attempting the organization of an irrigation district.

WRIT GRANTED.

*Le Roy B. Young,* of Brigham City, for plaintiff.

*D. A. Skeen,* of Salt Lake City, and *M. C. Harris,* of Logan, for defendants.

THURMAN, J.

Plaintiff seeks by this proceeding to prohibit and restrain the board of county commissioners of Cache county, Utah, from proceeding further in the attempted organization of a certain irrigation district in said county, more fully described in plaintiff's complaint. The question presented for our consideration arises on defendant's demurrer to the complaint.

The organization of the contemplated district is by virtue of the authority conferred by chapter 68, Sess. Laws Utah 1919, and as the complaint, with its exhibits, is exceedingly voluminous, we are of the opinion that both time and space may be economized by quoting sections 1 and 2 of the act in full, and stating the effect of such other sections as may be necessary to an understanding of the questions involved:

"Section 1. In the interest of conserving and putting to beneficial use the public waters of the state, and preventing undue waste thereof, the Governor of the state of Utah, upon the recommendation of the State Engineer, or fifty or a majority of owners of lands or holders of title or evidence of title to lands requiring water in any district, may propose the organization of an irrigation district under the provisions of this act, and when so organized such district shall have the powers conferred or that may hereafter. be conferred by law upon irrigation districts; provided, that where ditches, canals, or reservoirs have been constructed before the passage of this act, such ditches, canals, reservoirs and franchises, and the lands fully watered thereby shall be exempt from the operation of this law, unless such district shall be formed to purchase, acquire, lease or rent such ditches, canals, reservoirs and their franchises, or unless such district shall be formed to make contract with the United States under any federal law; provided, further, that resident entrymen upon public lands of the United States, and purchasers of state lands within the proposed district shall be deemed to be the owners of lands or holders of title or evidence of title to lands within the district for the purpose of becoming petitioners for the organization of such irrigation district, and shall share all the privileges and obligations of private landowners within the dis-

trict, entrymen upon the public lands of the United States to be subject to the terms of the Act of Congress approved August 11, 1916, entitled, 'An act to promote reclamation of arid lands'; and provided, further, that a guardian, executor or an administrator of any estate, who is appointed as such under the laws of this state, and who as such guardian, executor or administrator, is entitled to the possession of the lands belonging to the estate which he represents may on behalf of his ward or the estate which he represents, upon being authorized by the proper court, sign and acknowledge all petitions in this act mentioned vote at all elections, and may show cause as in this act mentioned, why lands should not be included in or excluded from the district.

"Sec. 2.   For the purpose of establishing an irrigation district as provided by this act, a petition shall be filed with the board of county commissioners of the county which embraces the largest acreage of the proposed district; said petition shall state that it is the purpose of the petitioners to organize an irrigation district under the provisions of this act, and shall state the proposed means of water supply, the name proposed for such district and shall be accompanied by a plat of the lands to be included in the proposed district; the petition shall pray the board to request that a water survey and allotment of water for the lands within the proposed district be made, that the land to be included in the proposed district be determined, listed with water allotment and platted, and that the question of final organization of the same be submitted to the vote of landowners within the proposed district; the petition shall be signed by the Governor, or if proposed by land owners, by fifty or a majority of such landowners or holders of title or evidence of title to land within the proposed district.   If the petition is presented by landowners it must be accompanied by a good and sufficient bond to be approved by said board of county commissioners in double the amount of the probable cost of organizing such district, exclusive of the cost of water survey, and conditioned for the payment of all such costs incurred in said proceeding in case said organization shall not be effected; no bond need accompany a petition by the Governor.   The cost of the water survey, and all other costs incurred upon petition filed by the Governor, shall, if organization of the district be not effected, be borne one-half by the county or counties in which the proposed district is situated, in proportion to the acreage, and one-half by the state of Utah; but in case organization of the district is effected all such costs and expenses, including cost of the water survey, shall be repaid by said district. Upon the filing of such petition with the board of county commissioners they shall send a certified copy of same to the State Engineer of the state of Utah, with a request that the water survey and allotment be made.   Thereupon it shall be the duty of the State

Engineer to cause to be made a water survey of all lands within the district for the purpose of determining and allotting the maximum amounts of water which could be beneficially used on such lands; each forty-acre tract or smaller tracts in separate ownership shall be separately surveyed and the allotment made therefor. On completion of said survey and allotment, the State Engineer shall file with the board of county commissioners with which the petition for the said district is filed, his return of survey and report of allotment. Upon receipt of the report and return from the State Engineer, the board of county commissioners shall cause to be published, notice that petition for formation of an irrigation district has been filed, water survey and allotment made, and a date set for the hearing of application for exclusion and inclusion of lands and revision of allotments. Such notice shall be published once a week for three consecutive weeks, the last publication of which shall be at least one week prior to the date set for the hearing, in some newspaper of general circulation published in the county, or if the district embraces lands in more than one county, then in a newspaper of general circulation published in each such county, or if there be no such paper published in any such county or counties, then in some newspaper having general circulation in such county or counties."

Section 3 provides that, upon the date set for hearing applications for the exclusion or inclusion of lands, as provided in section 2, the commissioners shall proceed to determine, list, and plat the lands to be included in said proposed district, with the allotments of water made therefor. They shall not exclude any lands included in the petition which require water and are susceptible of irrigation by the same system of waterworks applicable to other lands in the proposed district, nor shall they include any land which in the judgment of the commissioners will not be benefited by the proposed system. This section also provides that when the lands included in the proposed district shall have been determined, listed, and platted, as aforesaid, the commissioners shall make an order to that effect and designate the name of the proposed district, and shall by further order, duly entered upon the record, call an election of the landowners of said district to be held for the purpose of determining whether such district shall be organized under the provisions of said act, and also provide for the division of the district into vot-

ing districts and the names of persons to be voted for as directors.

Section 4 provides for the publication of notice of the election above referred to, and also declares that, at all elections under the act, all persons shall be entitled to vote who are the owners of agricultural lands to which water has been allotted within the district, and shall be entitled to cast one vote for each acre-foot of water so allotted.  This section also provides the form of ballot to be used at such election.

Section 5 provides for canvassing the returns and declaring the result.  There are other provisions in these sections, and also in subsequent sections of the act, but in the opinion of the court it is not necessary to refer to them in detail in this connection.

The complaint of the plaintiff consists of a detailed statement of the proceedings of the landowners of the proposed district and of the county commissioners in respect thereto, from the date of the petition of the landowners provided for in section 2 of the act, which petition was filed December 20, 1920, down to the holding of the election, as provided in sections 3 and 4, which election, it is alleged, was duly held June 1, 1921.

It will greatly simplify and abbreviate our statement of the case to state at this point that there is no error or irregularity alleged or relied on by plaintiff in any of these proceedings that merits the attention and consideration of the court, except those relating to the qualifications of the persons who signed the petition for the organization of the district.

The complaint shows that plaintiff himself is a landowner and taxpayer in the proposed district; that the petition for the organization of the district was signed by 52 persons purporting to be owners of land therein requiring water; that out of said 52 persons there were not 50 who owned land or were holders of title or evidence of title to land, either in said district, as proposed by the petitioners, or as afterwards determined by the commissioners.  The complaint also shows that at the hearing before the commission, on application for

the exclusion and inclusion of lands as provided in section 3 of the act, the commissioners found that only 29 of the 52 signers of the original petition were the owners of land which required water, or which would be benefited by the proposed system.

Plaintiff alleges upon his information and belief that at the election held June 1, 1921, a majority of the votes cast were in favor of creating the district after the hearing upon the question of exclusion and inclusion of land as provided in section 3. At this election every landowner to whom water was allotted was entitled to cast one vote for each acre-foot of water so allotted. It does not appear from the complaint that a majority of the landowners in the proposed district to whose land water had been allotted voted for the creation of the district. It is finally alleged in the complaint that the commissioners threaten to, and will, meet on June 13, 1921, to canvass the returns of the election held on June 1, and declare said territory duly organized as an irrigation district under the name and style of the Peterboro-Mendon irrigation district. As stated in the beginning, the purpose of this proceeding is to prohibit the completion of the organization of said district, and prevent the establishment thereof.

The single question presented for our determination is, Can the board of county commissioners of a county, under the provisions of chapter 68, Sess. Laws Utah 1919, organize and establish an irrigation district where it appears that the proceedings were initiated by the landowners themselves, and where it also appears from the findings of the commissioners that neither 50, nor a majority of the owners of land or holders of title or evidence of title to land requiring water within the district signed the petition for the organization of such district?

It is the duty of this court, according to its best knowledge and understanding, to declare the law as it finds it, and determine the intent and purpose thereof from the language used by the Legislature in expressing such purpose and intention. This is the cardinal rule of construction, and should not be departed from unless the terms used

are so ambiguous or confusing as to render the meaning of the 'language doubtful, in which case it becomes our duty to resort to other rules of construction.

In the very beginning of section 1 of the act in question it is made perfectly plain that the purpose of the act is to supply water to lands requiring it, and not to lands that do not require it, or that will not be benefited thereby. To that end, where the scheme is set on foot or initiated by the landowners themselves, we believe it accords with both reason and common sense to hold that the statute, which limits the right to propose an organization to a definite number or a majority of those owning land requiring water, is not only mandatory, but jurisdictional, and whenever an objection is seasonably made the statute must be strictly complied with in order to establish a valid organization.

The findings of the commissioners affirmatively show that the petition was not signed by 50 owners of land requiring water. Even if it were possible to counterbalance or offset the effect of this defect by showing that the petition was signed by a majority of landowners possessing the requisite qualifications, still no such showing was attempted; nor does any such fact appear. It does not even appear that the district as finally determined by the acre-foot vote cast at the election on June 1, 1921, is composed of persons a majority of whom have the qualifications prescribed by section 1 of the act.

A question analogous in principle to the one presented here came before the Supreme Court of California in 1895. The case is entitled, *Directors of Fallbrook Irrigation District* v. *Abila*, 106 Cal. 355, 39 Pac. 794. The action was instituted by the directors of the district to have the courts approve and confirm all the proceedings of the district, including the form of certain proposed bonds which the district desired to issue. The lower court found in favor of the directors, but on motion of defendant granted a new trial. The motion was granted, on the ground that the petition for the organization was not signed by 50 "freeholders owning lands," as required by section 1 of the act known as the "Wright Act" (St. Cal.

1887, p. 29), the provisions of which are in some respects similar to the Utah act. It appears in that case that two of the signers were not "freeholders of lands," and upon that ground the Supreme Court affirmed the order granting a new trial. In the case at bar it was found by the commissioners that the lands of 23 of the 52 who signed the petition did not require water, or were already sufficiently supplied, or would not be benefited by the proposed system. It seems to us that if the California case was correctly decided, the contention of the plaintiff in the instant case should be upheld.

In *Central Irrigation District* v. *De Lappe,* 79 Cal. 354, 21 Pac. 825, is another case under the "Wright Act" involving a similar question. That was also an action by the directors of an irrigation district to confirm the validity of the organization. It was held by the court that owners of small residence lots in towns and cities are not such owners of land as are qualified signers of a petition for the organization of an irrigation district within the meaning of section 2 of the act requring such petition to be signed by 50 owners of land desiring to improve the same by irrigation. This case illustrates the extreme length to which the California court has gone in maintaining the importance and sanctity of the petition in this class of cases. It demonstrates the fact that in the opinion of that court the petition, which lies at the very foundation of the right and power to organize an irrigation district, must be signed by persons having the qualifications prescribed, not only by the letter of the act, but within its spirit and purpose as well.

It seems, however, that, while the owners of small residence lots in cities and towns are not qualified to sign the petition, yet such lots may afterwards be included if the board of supervisors of the county so determine. *Board of Directors* v. *Tregea,* 88 Cal. 334, 26 Pac. 237. In 3 Kinney on Irrigation (2d Ed.) at page 2555, speaking of the petition in this class of cases, it is said that the petition must strictly comply with the statute of the state where the district is sought to be organized.

Aside from any adjudicated cases, or other authority on the question, it seems to the court that we have no right or

power to disregard and set at naught the plain, unequivocal words of the statute under which authority is claimed for the organization of the district. It would require but little strain upon the imagination to conceive of great injustice being done by upholding the organization of a district initiated by persons not possessing the qualifications prescribed by the statute. As they are not the owners of land requiring water, their lands, of necessity, at the proper stage of the proceedings, will be excluded. They will thereby escape the burdens of taxation resulting from a system instigated by themselves and imposed upon others, perhaps without their consent, and against their protest. If in subsequent proceedings each individual owner of land requiring water was limited to one vote, probably no serious prejudice or injustice could result. But according to the plan prescribed by the act, after the hearings are had on the question of excluding and including lands, and designating the allotments of water therefor, the voting then is on the basis of acre-feet. Each acre-foot is entitled to one vote, and the small holder of land is therefore greatly restricted in his voting power. With these considerations in view, and from the unequivocal words of the statute, we are impressed with the conviction that, unless the Governor, upon recommendation of the State Engineer, should conclude that an irrigation district should be formed, none should be established without the initial consent of at least 50, or a majority, of those owning land requiring water. It gives the small holder of land in the very beginning an opportunity to register his protest against a project which probably, he may think is detrimental to his best interests, and we are of the opinion that he should not be deprived of such opportunity.

In defendants' brief it is said: "It is affirmatively set out that a majority of the landowners within the district voted for the organization." Counsel for defendants misinterpret the meaning of the allegations set forth in the complaint. The complaint alleges, on information and belief, that a *"majority of the votes cast at such election,"* not a *"majority of the landowners within the district,"* voted for its organization. (Italics ours.) There was in all probability a substan-

tial difference between the number of votes cast and the number of landowners voting. But enough has been said upon that question to illustrate the views of the court.

Defendants invoke the rule, supported by many authorities, relating to drainage districts, special elections, divisions of counties, organizations of towns, removal of county seats, etc., to the effect that the petitioners cannot withdraw their names after jurisdiction has once been acquired. Even this rule is not universally sustained, as shown by some of the authorities referred to in the note to *Sim* v. *Rosholt*, 16 N. D. 77, 112 N. W. 50, 11 L. R. A. (N. S.) 372, cited by counsel for defendants. As far as we have investigated the cases cited in the note, the persons attempting to withdraw after the petitions were received and filed were persons who were undoubtedly qualified at the time they signed the petition, and the tribunal passing upon the question of the right to withdraw refused to permit the withdrawal for the purpose of ousting jurisdiction which had already attached. The principal case and the cases cited in the note make interesting reading, and from our point of view tend strongly to confirm the views heretofore expressed.

The argument of counsel for defendants seems to proceed upon the theory that, if it appears on the face of the petition that 50, or a majority, of the landowners within the proposed district, having the qualifications prescribed by the statute, have signed the petition, and such petition is received and filed, then jurisdiction attaches, and thereafter the district may be organized and established, even though such signers may not have actually possessed the statutory qualifications at the time they signed the petition. In view of what we have already said, it is needless to assert that we cannot agree with such contention. It smacks too much of the peculiar estimate placed by a once-famous New Yorker upon the object and purpose of a political platform—"Simply made to get in on." We are constrained to regard the question in a more serious light, and hold that an irrigation district, under the provisions of the act in question, cannot be organized or established upon the initiation of the landowners of the pro-

posed district unless the required number of petitioners therefor actually possess the qualifiations prescribed by section 1 of the act, as hereinbefore stated.

It follows that a peremptory writ of prohibition should issue, as prayed for in the complaint.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.