[No. 5876.]

AHERN ET AL. v. THE BOARD OF DIRECTORS OF THE HIGH LINE IRRIGATION DISTRICT.

1. **Water Rights—Irrigation Districts—Organization—Notice— Statutory Construction.**

Section 2 of the Colorado irrigation district act (Sess. Laws 1901, c. 87) provides that, in organizing an irrigation district, a petition must be presented to the board of county commissioners, signed by a certain number of qualified persons, and that the petition must be published for at least two weeks prior to such presentation, together with a notice stating the time of the meeting at which the same will be presented. In an attempted organization of a district, the publication notice read: "To the Board of County Commissioners of * * * County, Colorado: We, the undersigned, hereby give notice that on * * * we will present to your honorable body, for proper consideration, a petition * * * which petition shall particularly set forth the following, to wit:"   And immediately following was a copy of the petition in its entirety, closing with the signatures of the peti-

tioners. Held, that such notice was insufficient, since the signatures to the petition were essential parts of the petition to be published, and therefore could not, in any proper sense, be considered signatures to the notice, which latter are necessarily required to show the persons authorizing the notice; and that such notice is also fatally defective in that it is misleading, because directed to the board of county commissioners.—P. 416.

2. **Water Rights—Irrigation Districts—Statutes—Common-Law Rules of Evidence Should Be Given Reasonable Construction.**

The Colorado irrigation district act (Sess. Laws 1901, c. 87), not having declared the character of the proof by which any fact may be established in a court of justice, it must be established in accordance with the common-law rules of evidence; and the act should, like other similar statutes, be given a reasonable construction, bearing in mind that in this state statutes imposing special taxes or burdens are strictly construed, and, in case of doubt, in favor of the taxpayer, and this notwithstanding the provision that "every material statement of the petition" filed by the board of directors to have the validity of its organization and bond issue determined "not specifically controverted by the answer, shall, for the purpose of said special proceedings, be taken as true"; and the further provision that "the court, in inquiring into the regularity, legality or correctness of said proceedings, must disregard an error, irregularity or omission which does not affect the substantial rights of the parties to said proceedings."—P. 419.

3. **Water Rights—Irrigation Districts—Organization—Evidence —Proceedings to Determine Validity—Best Evidence.**

In a special proceeding by the board of directors of an irrigation district to have the validity of its organization and bond issue determined, in proof of the qualifications of the signers of the petition presented to the county commissioners, affidavits of the circulators of the petition stating in general terms that the signers of the petition had the statutory qualification were introduced in evidence, such circulators later testified to the same effect, and abstracts of title showing the record owners were also introduced in evidence. Held, that such documents were not admissible; that the rule requiring the best evidence was violated, without showing necessity for secondary evidence; and that the large expense necessary to obtain the oral evidence or depositions of the signers, of itself, is no reason for dispensing with such evidence.—P. 420.

**4.  Same.**

A special proceeding by the board of directors of an irriga-tion district to have the validity of its organization and bond issue determined, where an issue is made concerning the quali-fications of the signers of the petition presented to the county commissioners, the board of directors must prove such qualifica-tions, and it cannot rely upon the decision of the county com-missioners that, in the opinion of that body, such proof was made; nor can it introduce in evidence transcripts or copies of the evi-dence heard before the county commissioners or before its own body to prove any of the issues in said proceeding, since the court must determine such questions upon evidence actually pro-duced before it.—P. 420.

**5.  Same—Matters Reviewed.**

Section 2 of the Colorado irrigation district act (Sess. Laws 1901, c. 87) provides that, though the board of county commis-sioners may modify the boundaries of a proposed district as de-scribed in the petition, in doing so it shall not exempt from the operation of the act any territory therein described which is susceptible of irrigation by the same system of works applicable to the other lands in such district, nor shall any land which will not, in the judgment of the board, be benefited by irrigation by the system, be included therein. Held, that the action of the county commissioners in excluding lands, where there was an abuse of power but no fraud or bad faith, may be reviewed in a special proceeding by the board of directors of the irrigation district to determine the validity of the organization and bond issue.—P. 421.

**6.  Same.**

Section 2 of the Colorado irrigation district act (Sess. Laws 1901, c. 87) provides that, though the board of county commis-sioners may modify the boundaries of a proposed irrigation dis-trict as described in the petition, in doing so it shall not exempt from the operation of the act any territory therein described which is susceptible to irrigation by the same system of works applicable to the other lands in the district, nor shall any land which will not, in the judgment of the board, be benefited by irrigation by the system, be included therein. Held, that where, in proceedings for the organization of a district, the county com-missioners referred requests for the exclusion of land to a com-mittee of the petitioners, which had the organization of the dis-trict in charge, and affirmed the committee's determination with-out any investigation or any evidence taken by them, there was an abuse of the power conferred upon them by statute.—P. 423.

*Appeal from the District Court of Arapahoe County.
Hon. Louis W. Cunningham, Judge.*

Special proceeding by the board of directors of
the High Line Irrigation District for the confirmation
of their organization and proceedings for the issue
and sale of bonds of the district.   The proceedings
were contested by Thomas F. Ahern, Nellie M. Ahern,
Helen H. Old, John W. Old, George H. Old, Edwin
H. Park and Carrie L. Old-Park, owning land within
the district.   From a decree entered in accordance
with the petition, the contestants appeal.

*Reversed.*

Mr. ALEXANDER B. McKINLEY, for appellants.

Mr. J. C. HELM, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of
the court:

This special proceeding was brought under sec-
tions 55-59 of our irrigation district act of 1901 (Ses-
sion Laws 1901, p. 198).   The substantive part of
this act is modeled upon, and in the main is a literal
transcript of, the Wright Irrigation District act of
California of 1887.   The particular sections of our
act upon which this proceeding is founded were also
copied from the laws of California, but in that state
they were embodied in a separate act in 1889.

In *Anderson. v. Grand Valley Irr. Co.*, 35 Colo.
525, will be found a summary of the various pro-
visions of our statute which was there held to
be not obnoxious to the constitutional objections
urged against it.   We then considered and de-
cided only the validity and not the proper construc-
tion of the act, except in so far as the meaning was
necessarily involved in the determination of its
validity.

In substance, these remedial provisions authorize the board of directors of an established irrigation district to institute in the district court a special proceeding, such as the pending one, to obtain a decree approving its organization and confirming all of the proceedings of the board of county commissioners and of the district itself providing for and authorizing the issue and sale of the bonds of the district. One, and perhaps the chief, object is thus to validate the bonds by a decree in advance of their issue, thereby facilitating their sale and enhancing their value.   An opportunity is also afforded any affected land owner, who objects and comes in and denies the petition, to require proof by the board of the essential preliminary steps, or to show, in his own behalf, a failure therein.   Such was the purpose of the board of directors of this irrigation district in bringing this proceeding, the hearing of which resulted in a decree confirming the organization of the district and validating the proposed issue of bonds.   From that decree appellants have appealed.

1.   In the court below, appellants challenged the constitutionality of the act, but do not renew the challenge here, as, before the briefs herein were filed, this court, in the *Anderson case,* had ruled adversely to them upon that point.   The scope and effect of a decree in this confirmation proceeding is not here discussed or determined, except as between the immediate parties.

2.   At the threshold of the case, we are met with the assignment of error that the board of county commissioners did not obtain jurisdiction, and all its subsequent acts and those of the board of directors of the district are void because no sufficient notice was given, as required by the act, of the time of the presentation to the board of county commissioners of the petition for the formation of the district.

It is provided by section 2 that those who desire to organize an irrigation district shall file a petition with the board of county commissioners of the county which embraces the largest acreage of the proposed district. This petition, containing the prescribed allegations, must be signed by a majority of the resident freeholders who are qualified electors, and who shall own a majority of the whole number of acres belonging to the resident electors, of the proposed district. Such petition shall be published for at least two weeks before the time at which the same is to be presented to the board, in some newspaper printed and published in the county where the petition is presented, together with a notice stating the time of the meeting at which the same shall be presented.

These provisions as to notice and publication are identical with the corresponding sections of the Wright act. *In re Central Irr. Dist.*, 117 Cal. 382, there was considered and decided an exactly similar contention. It was there held—and nothing to the contrary is decided in *Tulare Irr. Dist. v. Shepard*, 185 U. S. 1—that the publication of this notice, as well as the petition, is an essential prerequisite to conferring upon the board jurisdiction to proceed in the matter of the organization; such notice is in the nature of process, indeed the only process by which the property owners to be affected are notified and given an opportunity to present to the board their objections; in this matter the board sits as a court of special and limited jurisdiction; that the notice must be given by the petitioners themselves, and that both the notice and the petition must be published for the required length of time. It appears from the opinion in the case referred to that a copy of the petition was inserted in the newspaper, and immediately below it was the following notice:

"The foregoing petition will be presented to the honorable board of supervisors of Colusa county on Monday, October 10, 1887, at 10 o'clock a. m. of that day." The notice was unsigned, and did not bear upon its face any showing of authority. The notice did not show that it was given by the petitioners, who were the only ones who could issue the process. The court therefore held that such publication was not a compliance with the statute, and the board of supervisors did not thereby acquire jurisdiction to proceed to the organization of the district.

The appellee board concedes, as it must, if the statutory notice in the nature of process was not given as the statute requires, the jurisdiction of the board to organize the district was lacking; but counsel contend that the California decision is not in point. The publication in the present case was in the following form:

"To the Board of County Commissioners of Arapahoe County, State of Colorado:

"We, the undersigned, hereby give notice that on Saturday, the 25th day of July, A. D. 1903, at the hour of ten o'clock a. m., we will present to your honorable body for proper consideration and action, a petition for the organization of the High Line Irrigation District, which said petition shall particularly set forth the following, to wit:" Immediately below in the newspaper was a copy of the petition in its entirety, closing with the signatures of the petitioners.

The distinction appellee seeks to make between the publications in the two cases is this: Whereas in the California case the petition, including the names of the petitioners, precedes the unsigned notice, in this case the notice comes first and is followed by the petition, hence the signatures to the petition may be regarded as signatures to the notice also.

We are unable to agree with this contention. The statute requires publication, not only of a prescribed notice, but of the petition. The signatures to the petition are essential parts of the petition itself. Indeed, the petition without the signatures is not a petition at all. Signatures to the petition, therefore, are not, and cannot be, in any proper sense, signatures to the notice. The petition here purports to have been signed in June, 1903, and the first publication of notice was made July 17, 1903. There is no presumption that the notice was written at the time the petition was signed. It seems clear that the petition was signed long before the notice was prepared. There is no distinction in principle between these two cases.

3. The notice is also fatally defective in another particular, in that it is misleading. It is directed to the board of county commissioners. We do not feel called upon now to draft a form of notice, or definitely say how, if at all, it should be addressed, or what its contents should be. Manifestly, however, the object of the required publication is to notify land owners within the boundaries of the proposed district, other than those who have signed the petition, that at a certain time and place the petition will be presented to the board of county commissioners for its action, as provided for in the statute, when and where they may attend to offer any objection they have. All these considerations should be in the minds of those who prepare and sign the notice. There is no necessity for addressing it to the board, and the statute does not require it.

The effect of this decision as to notice is to make the organization of the proposed district invalid from the beginning, as jurisdiction of the board did not attach; hence, all other assignments of error might be ignored. But if another attempt to organ-

ize is made, we ought to express our views upon some other questions argued by counsel so that petitioners in this and other proposed districts may have some guide for their future action, the public officers on whom is imposed the duty of administering the law may know what is exacted of them, and the district courts may be advised of their power in a special proceeding of confirmation.

Opposing counsel differ as to the proper construction of this act, the appellants arguing that in this proceeding, where the board of directors itself comes into court and asks for a decree confirming the different steps which have been taken in organizing the district and issuing the bonds, strict proof should be required in case land owners affected thereby deny the alleged regularity or allege non-observance of the antecedent conditions. The appellee, upon the other hand, contends for a more liberal rule of construction. Here appellants specifically deny the allegations of the petition, and affirmatively plead many irregularities and non-compliance with the statute.

Some of the earlier decisions in California, at least so far as the mere organization of districts is concerned, favor a reasonably liberal rule of construction in order to carry out the purposes of the law. Such are *Irrigation Dist. v. De Lappe,* 79 Cal. 351; *Board of Directors v. Tregea,* 88 Cal. 334. 'Notwithstanding provisions in the California statute, identical with our own, that ''Every material statement of the petition not specifically controverted by the answer shall, for the purpose of said special proceedings, be taken as true,'' and ''The court in inquiring into the regularity, legality or correctness of said proceedings must disregard an error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings,''

later decisions of their courts lay down a stricter rule of construction. *In re Madera Irrigation Dist.*, 92 Cal. 296, the court, at page 334 of the opinion, says: "The corporation has itself come into court and challenged an examination into the regularity of its organization, and asks the court to examine 'each and all of the proceedings for the organization of said district.' Upon such a proceeding it becomes as necessary for it to establish such regularity, and to give evidence of each step therein, as fully as if its acts were under investigation upon a writ of review." The court used this significant language:

"The object of the act in question, as was said in *Board of Directors v. Tregea*, 88 Cal. 334, is for the purpose of affording to investors in the bonds the security of a judicial determination of their validity, and, in order that this may have the effect intended by the legislature, it is not sufficient for the court to perform the mere perfunctory office of recording the determination of the board of supervisors that its proceedings in the organization of the district were regular. The court is not a *lit de justice* for the mere purpose of entering of record the rescripts of the board of supervisors and giving to them the dignity of its own judgment."

Again, in *Directors of Fallbrook Irr. Dist. v. Abila*, 106 Cal. 365, the court, in speaking upon the same subject, said that the burden of proof of the issues upon which it asks the judgment of the court is upon the corporation. As to the provisions of the statute, to which we have just adverted, to disregard irregularities not affecting the substantial rights of the parties, this was said:

"But this does not authorize the court to dispense with proof of the several acts which the statute has made requisite, or to assume that the omis-

sion of such acts, or any other error, was harmless. It is not sufficient that such error or omission *may not* have affected the substantial rights of the parties interested in the issuance of the bonds. It must clearly appear that it has not affected them, and, if there is a contingency by which these rights may have been affected by such omission or error, the corporation must make the contrary to appear."

In *Cullen v. Glendora Water Co.*, 113 Cal. 503, the court, in referring to the practical construction which the promoters of districts and others seem to have put on the act, that its main object is the issuance and confirmance of a liberal supply of bonds, and that the supply of water is incidental, used this language:

"But the absurdity and injustice of intending such a construction cannot be attributed to the legislature, since it has interposed at least one salutary check upon an improvident issue of bonds."

And again, at page 526: "I think the few checks provided by the statute against the reckless or improvident creation of bond liens of sixty dollars per acre on all the lands in one of these irrigation districts, largely by the votes of electors who own no part of such lands, should be strictly enforced in favor of the owners of such lands."

These later decisions, we think, lay down the better rule. They were made before our act was passed, and, as the latest authoritative expression of the judicial mind, were presumptively within the contemplation of our general assembly. The statute itself not having declared the character of the proof by which any fact may be established in a court of justice, it must be established in accordance with the common-law rules of evidence; and the act should, like other similar statutes, be given a reasonable construction, bearing in mind that this court has decided

that statutes imposing special taxes or burdens are. strictly construed, and, in case of doubt, in favor of the taxpayer.—*People v. Koenig*, 37 Colo. 283. The district court in this proceeding apparently followed these earlier, instead of the later, California decisions, and in this respect erred.

4. We refer to some of the more serious errors into which the court was led by adhering to the wrong construction. As already stated, the statute requires that the preliminary petition which is presented to, and moves, the board of county commissioners to action shall be signed by a designated number of persons having certain qualifications. This requirement is important, mandatory and jurisdictional. At the trial in the court below the affidavits of two circulators of this petition, which were presented to the board, were admitted in evidence over the objection of the appellants. These affidavits stated in general terms that the signers of the petition had the statutory qualifications. In the oral evidence of the affiants, which was later given at the trial, similar statements were made. Abstracts of title showing the record owners were also introduced over the objection of the appellants. These documents were not admissible at this trial. Upon this hearing before the court, common-law rules of evidence prevail. Among these rules is one that requires the production of the best evidence, unless a proper foundation is laid for secondary evidence. This rule was violated, and no necessity for enforcing the exception was shown. While it may be true that it would entail large expense to produce the best evidence of the qualifications of the signers to this petition—their oral testimony or depositions—that, of itself, is no reason for dispensing with such evidence. Where, as here, an issue is made touching the qualifications of the signers, it is incumbent upon the board of directors

in this proceeding, by legitimate evidence at the trial, to prove it, and it cannot rely upon the decision of the board of county commissioners that, in the judgment of the latter body, such proof was made. Transcripts or copies of the evidence that the board of county commissioners heard in organizing the district are plainly inadmissible, as has been expressly ruled in the California cases cited.   The facts of the petition, if properly and specially traversed, must be proved by petitioner at the trial, irrespective of what evidence was before the board of county commissioners.   In this proceeding the district court must, for itself, and upon the evidence produced before it, wholly aside from the orders made and evidence heard by the two statutory boards, determine the validity or invalidity of the proceedings had before them.   The court cannot, and should not, determine the questions submitted for its decision upon the record made before the statutory tribunals, but upon evidence actually produced at its own hearing. We are not deciding what weight is to be given to the decisions of these two statutory tribunals when collaterally attacked.   This is not a collateral attack. It is the method the statute itself provides for a direct and original examination into the organization of a district, to see if it is properly created, and if all subsequent proceedings are regular, and all statutory requirements and safeguards have been observed.   Clearly, then, the court, in making this judicial determination, must decide all questions as courts do in ordinary civil actions.

5.   Section 2 of the act provides that, though the board of county commissioners may modify the boundaries of a proposed district as described in the petition, in doing so it shall not exempt from the operation of the act any territory therein described

which is susceptible of irrigation by the same system
of works applicable to the other lands in such dis-
trict, nor shall any land which will not, in the judg-
ment of the board, be benefited by irrigation by said
system, be included therein.    Appellee says that the
action of the board, both in excluding and including
lands, cannot, in the absence of actual fraud or bad
faith by the commissioners, be reviewed or set aside
by the court in this special proceeding; while the
appellants maintain that such review may be had
though the board was not guilty of fraud or actuated
by bad faith, if there was an abuse of power, or their
acts were manifestly against the weight of the evi-
dence, or against all of the evidence.

The supreme court of California, in some of the
cases already cited and in various other decisions,
has given to the board of commissioners large discre-
tion in these particulars.    Appellee says that the su-
preme court of the United States in *Fallbrook Irr.
Dist. v. Bradley,* 164 U. S. 112, has so ruled.    That
court has laid down no such doctrine, but has said,
following out its usual rule in similar cases, that, in
the absence of actual fraud or bad faith, it will not
review questions of fact decided by a duly constituted
state tribunal to which the ascertainment of such
facts has been committed by the legislature.    Mr.
Justice Peckham said, however, in this connection,
that it may be that the action of the board upon any
question of fact, or as to the contents or sufficiency of
the petition, or upon any other act of a jurisdictional
nature, is open to review in the state courts, and that
whether a review is or is not given upon any of these
questions of fact is a matter of legislative discretion.
It appears from the case already cited that the su-
preme court of California allows a wide discretion
to the board of commissioners, nevertheless it has

reviewed and set aside their findings on such questions of fact.

It is clear that in the present case there was an abuse of power by the board of county commissioners in the exclusion of lands from the proposed district. It appears practically uncontradicted, and by the testimony of the county commissioners themselves, that the board excluded nearly 15,000 acres of lands from the district as proposed by the signers of the petition. The method pursued was directly contrary to the unambiguous words of the statute, and in violation of the duty thereby imposed upon the board. The members of that body undoubtedly acted in good faith and in accordance with what they believed to be right, but it is just as certain that they— unintentionally, of course—were guilty of an abuse of power. The statute imposes upon the board the duty of determining the boundaries of the district, and they are required to pass upon and for themselves determine what lands shall be included in, and what, if any, excluded from, it. The method pursued by them when requests were made for exclusion was, in nearly all cases, to refer the matter to the committee of the petitioners which had in charge the organization of the district. If this committee reported favorably or unfavorably on the request, its determination was affirmed by the commissioners without any investigation or any evidence taken by them. This was virtually a surrender of their power, and, in legal effect, an abuse of the power conferred upon them by the statute.

At the trial below, in this proceeding, the appellants offered to show that large bodies of land were excluded from the proposed district which were susceptible of irrigation from the same system of works, and in all substantial particulars were situated with

reference to the proposed system and occupied the same position therein as the lands which were retained and included in the district. The court rejected the offer. It should have been admitted, and while, as we have said, the judgment of the board in the matter. of exclusion and inclusion must be given great weight, its decision therein is in the nature of a judgment and involves the exercise of a legal discretion, which can be set aside or corrected by the courts as in ordinary civil actions whenever, it is abused.

We have selected these two assignments of error for the purpose of explaining our views as to the construction to. be placed upon the substantial requirements of the statute. In the *Cullen case, supra,* a bond issue was prevented by the court because the board of directors failed to adopt proper plans for the acquisition and distribution of water. To what extent the action of the board in such matters will be reviewed or controlled, we decline, in advance of a proper case, to intimate. As the board of county commissioners did not acquire jurisdiction to form this district, as sufficient legal evidence as to the qualifications of the signers of the original petition was not produced upon the trial below, and as the evidence received by the court, which appellants' rejected offer of proof would, if admitted, strengthen, showed an abuse of power by the commissioners in excluding lands from the proposed district, the judgment must be reversed. It is unnecessary to consider the various other objections to the decree which have been argued by the appellants, as they may not again arise if further attempts should be made to organize the district. Sufficient has already been stated, we hope, to accomplish the objects we have mentioned as prompting the foregoing discussion.

For the reasons given, the judgment is reversed and the cause remanded with instructions to vacate the decree, and enter a new decree invalidating all proceedings of both boards.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.